# Shackelford, *et al. v.* Washburn, *et al.*

## *Bill to Revoke a Will.*

(Decided November 21, 1912. Rehearing denied December 17, 1912. 60 South. 318.

1. *Wills; Revocation; Birth of Children.*—Section 1599, Code 1852, (section 6160, Code 1907) when considered in connection with section 1597, Code 1852, which remained in force until repealed by elimination from the Code of 1907 does not deprive a testator of the right to make a will and their provisions are satisfied where the will shows that testator had in mind the possible birth of children and disposed of his property even to the exclusion of future children, in which case the birth of children afterwards did not revoke the will.

2. *Same.*—A will by a young married woman without children whereby she gives to her husband all her property "notwithstanding I may have a child or children living at my death" satisfies the requirements of section 1597, Code 1852 (repealed by Code 1907) and section 1599, Code 1852, now section 6160, Code 1907.

3. *Same; Construction; Application of Rule.*—The rule that heirs and heirship are favored operates only in the construction of wills in doubtful cases, and may not defeat the clear intention of testator, nor interfere with his right to dispose of his property as he chooses.

APPEAL from Montgomery City Court.

Heard before Hon. JOHN M. CHILTON, Special Judge.

Bill by Thomas Gilchrist Shackelford and others against B. M. Washburn and others, to declare a will revoked and to let in complainants to share in the estate conveyed by the will. From a decree sustaining demurrers to the bill complainants appeal. Affirmed.

LETCHER, McCORD & HAROLD and W. A. GUNTER, for appellants. The will in question does not meet the requirements of the statute.—8 Adol & E., 60; 7 A. & E. Anno. Cases, 788; *Baldwin v. Spriggs,* 5 Atl. 295; *Gay v. Gay,* 84 Ala. 238; *Rhodes v. Weldy,* 20 N. E. 461; 73 N. W., 155; 26 Amer. Reps., 159; *McCullom v. McKenzie,* 26 Iowa, 520; 29 N. H. 533; 137 Mass. 527;

sections 2282 and 2284, Code 1876. The restriction on
the effect of wills provided by these sections affords
no ground to contest the will and a determination of
the rights of the children was wholly without the juris-
diction of the probate court.—*Baker v. Chastain,* 18
Ala. 428; 1 Perry on Trusts, sections 13 to 17. Hence
the probate of the will was not res adjudicata.—20
Ala. 726; 52 Ala. 276; 27 Ala. 655; 24 Ala. 241; Shouler
on Executors, section 85; 46 Iowa, 487; 26 Amer. Rep.
157; 2 N. W. 945; 13 S. W. 1005; 199 Pa. 137; 137
Mass. 527.

HORACE STRINGFELLOW and STEINER, CRUM & WEIL,
for appellees. The contingency required by the statute
is fully provided for in the will.—Section 6160, Code
1907; 1 Jarman on Wills, *page 111; *Gay v. Gay,* 84
Ala. 43; *Sutton v. Hancock,* 115 Ga. 856. The appel-
lants are excluded by the express terms of the will,
for the statute was intended to apply only to surviving
children. Authorities supra. This statute had no ap-
plication to wills of married women.—50 S. W. 576;
*Holt v. Agnew,* 60 Ala. 360; *Mosser v. Mosser,* 32 Ala.
501; *Taylor v. Wood,* 52 Ala. 477; 40 N. Y. 405.

SOMERVILLE, J.—Appellants filed their bill of
complaint against B. M. Washburn and others, showing
the following facts: In 1868 Annie F. Washburn, a
young married woman, then without children, executed
her will containing this provision: "I give to my hus-
band, Benjamin M. Washburn, all the property I may
own or be entitled to at my death, *notwithstanding I
may have a child or children living at my death,* to be
disposed of by him as he may desire. I hereby appoint
him sole executor." (Italics ours.) The testatrix died
in 1880, in which year the will was duly probated in

Montgomery county. In the meantime five children had been born to her, all of whom, together with her said husband, survived her.

The complainants are the children of Mary E. Washburn and Bennie W. Washburn, who were two of the five children of the testatrix. The bill charges that the said will of Annie F. Washburn was revoked as to complainants' respective mothers by their birth after the execution of the will, which made no provision for that contingency. The prayer of the bill is for a decree declaring such revocation, and declaring complainants to be entitled to such share of the testatrix's estate as they would be by law entitled to had such will not been made. The respondent B. M. Washburn, who is the surviving husband of said testatrix, demurred to the bill on the ground that it contains no equity, and also that complainants are barred by laches.

The general demurrer, as argued by counsel and as considered by the chancellor, impeaches the equity of the bill in a threefold way: (1) Because the terms of the will satisfy the statute, and prevent the qualified revocation of the will by the subsequent birth of children; (2) because the statute applies to *testators* only, and not to *testatrices;* and (3) because, in any event, by the probate of the will its validity and operation as against the mothers of complainants became res judicata, barring the rights they now assert, and not subject to collateral impeachment. The views of the chancellor were adverse to demurrant's contentions numbered 1 and 2, but upheld his contention numbered 3, and hence the demurrer was sustained. The appeal is from that decree.

Section 1599 of the Code of 1852, which has survived without change to the present time (sections 6160, Code of 1907), is as follows: "Wherever a testator has a

child, born after the making of his will, either in the
lifetime or after the death of the testator, *and no pro-
vision is made in the will in any way for such a contin-
gency,* such birth operates as a revocation of the will,
so far as to allow such child to take the same share of
the estate of the testator as if he had died intestate."
For analogical reference hereafter, we here set out also
section 1597 of the Code of 1852, which almost immedi-
ately precedes section 1599: "If after making of any
will, disposing of his whole estate, the testator marry,
and have issue of such marriage, born either in his life-
time, or after his death, and the wife or such issue is
living at the death of the testator, such will must be
deemed revoked, unless provision has been made for
such issue, by some gift or settlement; or unless such
issue has been provided for in the will, or in such way
mentioned therein, as to show an intention not to make
such provision; and no other evidence can be received
for the purpose of rebutting the presumption of such
revocation." This section survived without change
until it was repealed by elimination from the Code of
1907.

Statutes similar to ours are to be found in the Codes
of most, if not all, of the states. Says Judge Freeman,
in his note to *Wilson v. Fosket,* 6 Metc. (Mass.) 400,
39 Am. Dec. 736: "It is clear that the principle upon
which all statutes providing for pretermitted children
are based is whether pretermission was unintentional,
although it may not be expressly so stated in the statute.
To say that a testator may dispose of his estate by a
will duly executed, and yet that he may not disinherit
any of his heirs, even though he indicates a clear inten-
tion to do so, is absurd." Having due regard, of course,
for the varying phraseology of these various statutes,
the principle stated by Judge Freeman has furnished

the key to their proper construction.—*In re Estate of Callaghan,* 119 Cal. 571, 51 Pac. 860, 39 L. R. A. 689; *In re Donges' Estate,* 103 Wis. 497, 79 N. W. 786, 74 Am. St. Rep. 885; *In re Estate of Newlin,* 209 Pa. 456, 58 Atl. 846. 68 L. R. A. 464.

Section 1597 of the Code of 1852 (as section 1953 of the Code of 1886) was the subject of consideration by this court in the case of *Gay v. Gay,* 84 Ala. 38, 4 South. 42. It was there said: "A construction should not be placed on the statute which will impair or interfere with the right of the testator to absolutely dispose of his property as he may deem proper, further than its terms, expressly or by clear implication, require to accomplish the intended ends. It does not operate to deprive the testator of the right and power to determine the nature and extent of the provision which he will make for those having claims on his natural affections. It does not undertake to declare the measure and extent of the provision which the testator must make for the after-born child. He may make no provision whatever, provided the child is mentioned in the will in such a way as to show an intention not to make any provision. The requirements of the statute are satisfied if it be shown by a provision, made by gift or settlement, or by mention of the issue in the will, that such issue was fully in his mind and contemplation, and that he acted deliberately on the matter of making provision for such issue."

We approve this reasoning, and think it is equally applicable to the statute here involved. The two statutes were framed and adopted at the same time, and are intimately related. It is impossible to conceive of a legislative policy so at variance with itself and with reason as to dispense with any positive provision for after-born children—where the testator so expressly

wills—in the one case, and to require it in the other. The language of the statute clearly forbids such a theory. It is to be observed that provision is to be made, not for after-born children, as most statutes require, but only for *the contingency*—that is, the chance event—of their birth; and not any definite provision, but provision *"in any way."* This can only mean that the testator must have borne that possible future event in his mind, and in the light of that consciousness, subject to its tempering influence, must have deliberately and expressly disposed of his property to the exclusion of such possible future children; and when this consciousness, this purpose, and this disposition, are clearly expressed in the will, the partial revocation provided for by the statute is avoided.

The Georgia statute is in this respect much like ours: "In all cases the marriage of the testator or the birth of a child to him, subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will."—Georgia Code 1882, § 2477. The object of the provision, said Chief Justice Bleckley in *Ellis v. Darden,* 86 Ga. 372, 12 S. E. 653, 11 L. R. A. 51, "is to secure a specific moral influence upon the testamentary act—the moral influence of having before the mind a contingent event so momentous as marriage or the birth of a child, and so deserving of consideration in framing a testamentary scheme." In a later case, *Sutton v. Hancock,* 115 Ga. 857, 836, 42 S. E. 214, 217, it was said by Cobb, J.: "The will must show that the testator had in contemplation the *event,* * * * and must have made some provision in the will in contemplation of such event Not that this provision must be of a beneficial interest in the testator's property, but the will must refer to the contingent event in some way and provide for it,

[Shackelford, et al. v. Washburn, et al.]

either by unequivocally making a beneficial provision for the child, or by disinheriting it altogether in such clear and unmistakable terms as to leave no doubt that the testator had the *event* in mind."

It is obvious that the numerous cases in other jurisdictions which deal with statutes that require provision for *the child,* instead of for the *contingency* of a child, are not at all in point. Thus far we are in agreement with the views of the chancellor. He concluded, however, that the language of the will did not satisfy the requirement of the statute; his theory being that "the statute contemplates that, if the line of descent is broken by disinheriting after-born children, it shall be cut as to all such children at the point of birth, whereas the present will cuts the line of some of them at the death of the testatrix."

In this conception of the meaning and effect of the statute we cannot concur. It is not apparent why the testator may not distinguish between his after-born children as well as between those already in being. If, for example, he should expressly disinherit his after-born *sons,* and say nothing as to after-born *daughters,* how would this offend either the language or the policy of the statute? And what difference can there be, in principle, if the distinction made is, as here, between children who survive the testator and those who do not? Doubtless the testatrix simply failed to contemplate the contingency of some of her future children growing to maturity, marrying, having children, and dying in advance of herself. But, even if she did, no sound reason can be advanced why her deliberate and express exclusion of those who might survive her should not be given effect; and surely the children, or the descendants of children, who fall within the excluded class, cannot claim the benefit of a revocation because

there might have been other children who, by reason either of inadvertence or of deliberation, are not expressly excluded.

We are not unmindful of the principle that heirs and heirship are highly favored by the law.—*Banks v. Sherrod,* 52 Ala. 267; *Wolffe v. Loeb,* 98 Ala. 426, 13 South. 744. But that principle finds its operation, so far as the construction of wills is concerned, only in doubtful cases. It has never been supposed that it should be permitted to defeat the clear intention of a testator, nor to interfere with his right to dispose of his property as he chooses—a right to which the right of heirship is strictly subordinate. The intention of this testatrix is perfectly clear. She wished her husband to have her estate, unshared even by her children, except as he might afterwards bestow it. Her language expressed her purpose. However we might be disposed to view the claims of descendants of children who died before the testatrix, were there any such, we are clear that as to *these* children her testamentary purpose, expressly declared, ought not to be defeated.

It is argued by appellants' counsel that the exclusion of individuals cannot be effected by the exclusion of a *class* to which they happen to belong, and that the exclusion must be specific or identical. It is not usual, however, for parents, however hopeful of the future, to name their children in advance of their physical conception. To individualize them is not possible, and they can be referred to at all only by some more or less general classification. The case of *Bowen v. Hoxie,* 137 Mass. 527, cited by appellants' counsel, does not support their contention, for it merely holds that a provision for children in general—there being some children *in existence*—does not show a conscious contemplation of

and provision for *unborn* children, which it was the purpose of the statute to secure.

As our conclusion upon this phase of the case must apparently be decisive of the 'whole case, we forbear, as unnecessary, any discussion of other questions which are fully and ably treated in the briefs of counsel and in the opinion filed by the chancellor.

We hold that the demurrer to the bill was properly sustained, for the reason above set forth, and the decree of the chancellor must be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.


