(110 So. 3)

**WILSON et al. v. RAND et al. (6 Div. 684.)**

(Supreme Court of Alabama. June 10, 1926. Rehearing Denied Nov. 4, 1926.)

**1. Wills ⬦497(2).**

Words "child" or "children," used in will in technical or legal sense, do not include grandchildren, especially if will is prepared by one skilled in law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Child—Children (In Wills).]

**2. Wills ⬦435.**

If will is unambiguous, there is nothing for construction.

**3. Wills ⬦497(2).**

Word "children" may include grandchildren or issue generally, when will would otherwise be inoperative and when testator's other words show such intent.

**4. Wills ⬦452.**

In case of uncertainty as to testator's intent, there arises a presumption against disinheritance of a grandchild, child of deceased child, especially in absence of unfriendly relations between testator and descendants.

**5. Wills ⬦497(2).**

Will of layman, written by himself soon after death of son, devising estate to wife for life, with remainder to "our children," held to include daughter of deceased son, within term "our children."

Appeal from Circuit Court, Jefferson County; W. M. Walker, Judge.

Bill in equity by Sarah Wynn Wilson and another against Helen Wynn Rand and another. From the decree, complainants appeal. Affirmed.

It appears that Alexander M. Wynn died, leaving surviving him his widow, four daughters, the complainants, the respondent Lillian Wynn McDonnell, and Mattie Wynn Yancey, and a granddaughter, the respondent Helen Wynn Rand. Said Alexander M. Wynn left also the following will:

"Know all men by these presents:

"That I, Alexander M. Wynn, of the county of Madison and state of Alabama, do make and ordain this my last will and testament.

"1st. I provided for my son, John R. Wynn, by furnishing him sums of money at different periods of his life, with part of which he purchased a house and lot on Clinton street in the city of Huntsville, Alabama, from Mr. R. S. Pulley, on which he lived at the time of his death.

"2d. I have provided for all the rest of my children as will be learned by referring to the deeds of conveyance which may be found by examining papers I have written up and signed for them.

"3d. I give and bequeath to my beloved wife all the property real, personal and mixed I may own at the time of my death, to be used by her during her natural life, and at her death to be divided equally among our children, share and share alike.

"4th. I leave my wife, Martha C. Wynn, executrix of this my last will and testament, without security, and also desire her brothers, Fleming D. & G. W. Ward to give her such aid and advice as they may be able in the management of the estate I may leave in her possession.

"In testimony of the foregoing writing, I sign the same on 6th day of April, 1897.

"[Signed] Alexander M. Wynn."

In 1918, Mattie Wynn Yancey died leaving a will by the terms of which all her property not therein specifically disposed of was devised equally to the parties to this suit.

The bill alleges that from the death of the widow of Alexander M. Wynn up to the death of Mattie Wynn Yancey the four sisters mistakenly assumed that the property involved was owned jointly by said four sisters and their niece, Helen Wynn Rand, one-fifth each; that after the death of Mattie Wynn Yancey, the three surviving sisters mistakenly assumed that the property was owned by the three surviving sisters and their said niece, one-fourth each; and that rents and profits had been distributed among them in the proportions indicated. The bill seeks an accounting from respondent Rand for rents and profits received by her by reason of the mistaken assumption of title in her and to which she was not entitled, and seeks also a sale of the property for division among the joint owners in the proportion of their respective interests.

Respondent McDonnell filed answer admitting the material allegations of the bill and offering no resistance. Respondent Rand answered claiming that title to one-fifth of the property vested in her under the will of Alexander M. Wynn immediately upon the death of the widow, her grandmother; that

she was included in the term "our children," as used in the will.

The trial court decreed in agreement with respondent Rand's claim of title, denied an accounting, and ordered a sale of the property for division. The complainants appeal from that decree.

Vassar L. Allen and A. Wynn Jones, both of Birmingham, for appellants.

Spragins & Speake, of Huntsville, for appellee McDonnell.

The word "children" in a will does not include grandchildren, unless the context of the will shows such purpose on the part of the testator. Scott v. Nelson, 3 Port. 452, 29 Am. Dec. 266; McGuire v. Westmoreland, 36 Ala. 594; Echols v. Jordan, 39 Ala. 24; Continental Life Ins. Co. v. Webb, 54 Ala. 699; Russell v. Russell, 64 Ala. 500; Russell v. Wright, 98 Ala. 656, 13 So. 594; Campbell v. Noble, 110 Ala. 382, 19 So. 28; Rosenau v. Childress, 111 Ala. 220, 20 So. 95; Baker v. Baker, 182 Ala. 194, 62 So. 284; Pierce v. Fulmer, 165 Ala. 344, 51 So. 728; Knight v. O'Brien, 202 Ala. 440, 80 So. 824; Runyon v. Mills, 86 W. Va. 388, 103 S. E. 112; Collins v. Toomer, 69 Ala. 14; 40 Cyc. 1448. There is no room for construction by the court, unless there is uncertainty apparent in the will itself. Baker v. Baker, 182 Ala. 194, 62 So. 284; Cook v. Williams, 202 Ala. 638, 81 So. 579.

London, Yancey & Brower, of Birmingham, and R. C. Brickell and Lanier & Pride, all of Huntsville, for appellee Rand.

By the provisions of his will the testator in this case gave a definition to the term "children," which showed it was intended to include appellee. Scott v. Nelson, 3 Port. 452, 29 Am. Dec. 266; 40 Cyc. 1448; 28 R. C. L. 250; Wallace v. Hodges, 160 Ala. 276, 49 So. 312; Castleberry v. Stringer, 176 Ala. 250, 57 So. 849; McCaffrey v. Manogue, 196 U. S. 565, 25 S. Ct. 319, 49 L. Ed. 600; Phillips v. Lawing, 150 Ala. 186, 43 So. 494; Guy v. Pruitt, 213 Ala. 422, 104 So. 805; Waton v. Williamson, 129 Ala. 362, 30 So. 281. A construction leading to disinheritance is sought by appellants; disinheritance is not favored. Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493; Banks v. Sherrod, 52 Ala. 267; 40 Cyc. 1411; Wolffe v. Loeb, 98 Ala. 426, 13 So. 744.

ANDERSON, C. J. [1, 2] This appeal involves the construction of the will of Alexander M. Wynn, the main point being whether or not Helen, the only child of the testator's son John R. Wynn, was entitled to share in the remainder, as dealt with by item 3, after the death of the testator's wife, it appearing that John died a few months before the will was made and left surviving his only child, Helen, then an infant. In other words, we are to decide whether or not Helen, the grandchild, was included in the use of the words "our children," as used in the third item of said will. It is unquestionably the law that where the words "child" or "children" are used in a will, in a technical or legal sense, grandchildren are not included, especially so when the will is prepared by one skilled in the law and who is familiar with the technical or legal meaning of the words. And, where the will is plain and unambiguous, there is nothing for construction or interpretation. On the other hand, the word "child" or "children" has been often construed when used in wills as including grandchildren, where it can be gathered from the entire instrument and surrounding facts and circumstances that it was the intention to use the word or words in the broader term and the fact that the will was drawn by the testator himself, who was not a lawyer, is a significant fact in arriving at the meaning of the words used. As said in our early case of Scott v. Nelson, 3 Port. 452, 29 Am. Dec. 266:

"It is admitted, that the word children does not, ordinarily and properly speaking, comprehend grandchildren or issue generally.

"There are two cases where it is permitted: (1) From necessity, where the will would be inoperative, unless the sense is extended beyond its natural import; and (2) when the testator has shewn, by other words, that he did not intend to use the word children in its proper actual meaning, but in a more extended sense."

[3, 4] There is, of course, no reason for the application of the first rule to the present case, so we must determine whether or not the testator has used other words or phrases in the will as would indicate that he did not intend to use the words "our children" in the proper technical meaning, but intended to include the child of John. If items 1 and 2 did not appear in the will there would be nothing to indicate that the testator intended to include his grandchild, but if these items, considered in connection with the other parts, indicate an intention to include the grandchild, it should be so construed, or if sufficient to create a doubt or uncertainty as to the intent of the testator, there arises a presumption against the disinheritance of this grandchild. 28 R. C. L. p. 229, § 190; Shackelford v. Washburn, 180 Ala. 168, 60 So. 318, 43 L. R. A. (N. S.) 1195; Banks v. Sherrod, 52 Ala. 267; Wolffe v. Loeb, 98 Ala. 426, 13 So. 744. This presumption is recognized especially in the absence of unfriendly relations existing between testator and descendants. March v. March, 186 N. Y. 99, 78 N. E. 704, 8 L. R. A. (N. S.) 180.

[5] As above stated, the will was made shortly after the death of the testator's son John, and shortly after he had deeded property to each of his four daughters. Therefore the purpose of the will was to dispose of the residue of his estate by giving same to his wife for her life and at her death to "our children." Item 1 recites that he had

made provision for his son John and item 2 recites that he had also provided for all the rest of his children, thus indicating that his purpose had been one of equality and 'not exclusion. He did not say that he had advanced John his full share, but treated John as being in the same class with the other children, notwithstanding he was dead. Had he intended to exclude John how easy would it have been for him to do so by so reciting in the first item or by naming his other children in item 3. The testator was a layman and wrote his own will. His son John had died leaving an infant daughter, who was the grandchild of the testator and his wife. Shortly after the death of John and before the making of the will, he executed deeds to each of his daughters for the evident purpose of making them equal with John, to whom he had made an advancement before his death. Therefore, when the testator prepared his will mentioning as he did in the first item his son John and dealt with the other children in the second item as of the same class with John and just as if he were alive, with nothing in the will evincing a purpose of exclusion, it would do violence to the humane instinct of this old man to hold that he did not have this fatherless child in mind when speaking of "our children" in item 3. John was dead and the grief over his death was evidently fresh in his mind and the conclusion is irresistable that he spoke, thought, and wrote of this child as his own and intended to include her in the term "our children." This was not only the lay meaning of the testator, but was the one given by all parties interested in or connected with the will for nearly 30 years, which is, at least, a circumstance indicating that the nonexpert mind considered the meaning of the word "children," as used in the will, as including this grandchild.

While the will considered in the case of Scott v. Nelson, 3 Port. 452, was perhaps stronger in showing that the testator intended to include his grandson Turner Bell in the word "children," still, we think it supports and justifies the construction we have given the will in question.

We have examined the numerous cases cited by counsel for appellants and a separate discussion of same can serve no useful purpose, as we are in thorough accord with the legal principles there announced and have intended to so make ourselves understood by this opinion. It is sufficient to say that none of them deal with wills identical with this one, and, as was said by Chief Justice Brickell in the case of Whorton v. Moragne, 62 Ala. 201, "cases upon wills had no brothers," and, while legal principles in these various cases should be respected, the interpretation of one will cannot conclude as to another couched in different language and evincing a different intent. At the cost of some repetition, as we understand the law, the word "children" may be interpreted as including grandchildren (representatives of a deceased child), where it can fairly be seen from the context that such was the intention of the testator as exhibited in his will, while the word "children" is ordinarily used as a word of description and limited to immediate offspring, yet the cases are quite numerous where a more extended meaning has been given to carry out the presumed intention of the testator and to prevent the disinheritance of grandchildren whose parents were not living. 4 Kent Com. (13th Ed.) § 419.

"'Although in its primary sense,' says Mr. Justice Story in Parkman v. Bowdoin, 1 Sumner, 359 [Fed. Cas. No. 10,763] 'the word "children" is a descriptio personarum who are to take, there is not the slightest difficulty in giving it the other sense, when the structure of the devise requires it.' Where a clause is fairly susceptible of two constructions also, that certainly is to be preferred which inclines to the inheritance of the children of a deceased child." Bowker v. Bowker, 148 Mass. 198, 19 N. E. 213.

We therefore hold that as the grandchild took a child's share under her grandfather's will, she is not answerable for the back rents, as claimed in the bill of complaint, and is also entitled to a child's share in the proceeds of the sale, as well as the interest acquired through the will of her aunt.

The decree of the circuit court is affirmed. Affirmed.

SOMERVILLE, THOMAS, and BOULDIN, JJ., concur.