(132 So. 32)

## SPENCER v. TITLE GUARANTEE LOAN & TRUST CO. et al.

### 6 Div. 772.

Supreme Court of Alabama.

Jan. 15, 1931.

See also post, p. 485, 132 So. 730.

Wm. M. Spencer, Jr., Borden Burr, and D. K. McKamy, all of Birmingham, for appellant.

E. L. All, John S. Coleman, and Bradley, Baldwin, All & White, all of Birmingham, for appellees.

222

BOULDIN, J.

On January 6, 1926, Mrs. Martha B. Woodward, than eighty-one years of age, by a trust instrument conveyed to Title Guarantee Loan & Trust Company her holdings of preferred and common stock in Wheeling Steel Corporation to be held, managed, and controlled by the trust company, with power of reinvestment.

The net income was to be paid to the grantor during her life, and after her death to her daughter, Margaret W. Hopkins, if living, during the term of her natural life.

Then followed this paragraph:

"(d) On the death of my daughter, Margaret W. Hopkins, or if she is dead at the time of my death, this trust is to terminate and the trustee is directed to divide the trust property and deliver one-third to my daughter, Bertha W. Underwood, if she be living, one-third to my son A. H. Woodward, if he is living, or to his children, if he is dead, and one-third to the children of my daughter, Margaret W. Hopkins."

Mrs. Woodward died in 1928, Mrs. Hopkins in ,1930. The present bill was filed by the trustee to construe the above quoted provision of the trust instrument, and in particular the provision that in the division of

the property on the termination of the trust, the trustee should deliver "one-third to the children of my daughter, Margaret W. Hopkins."

When the trust was created, Mrs. Hopkins had only one child living, Mrs. Margaret Evins Spencer, and could thereafter have no other child. However, Mrs. Hopkins had a grandson, Joseph W. Simpson. She was first married to Dr. Thomas E. Evins, who died in 1899, leaving only a small estate. Two daughters, Margaret and Josephine, were born of this marriage. After the death of Dr. Evins, the widow with her children lived in the home of her father, J. H. Woodward, and mother, Martha B. Woodward, until her second marriage to Mr. Hopkins, and thereafter lived next door until 1915, when Margaret married William M. Spencer, Jr. Josephine married James A. Simpson June 8, 1920; and to them was born Joseph W. Simpson, March 30, 1921. His mother, Josephine, died when he was about six weeks old. Since his mother's death the child has resided, by mutual arrangement, with Mr. and Mrs. Spencer. He was five years of age when the trust was created.

The inquiry is: Did Mrs. Woodward have in mind that upon a division of the property on the termination of the trust, the share of Mrs. Hopkins should go wholly to the daughter, Mrs. Spencer, or one half to her and the other to the child, Joseph W. Simpson, as representative of his mother, Josephine?

By the trust instrument Mrs. Woodward provided for a division of her large holdings of securities, a partial distribution immediately, and a further division after her death, or the death of Mrs. Hopkins, who was then in ill health. The trust was continued for her benefit for life.

In a sense there were three trusts created:

First, bonds of the par value of $124,000 and 200 shares of common stock of Union Pacific Railway Company were conveyed to the trust company with the duty to collect all interest accrued to January 1, 1926, for the benefit of Mrs. Woodward, and as soon thereafter as practical to make division between her three children, naming them, share and share alike.

Second, 60 shares of preferred stock in the Standard Sanitary Manufacturing Company were conveyed to the trust company for the use of the grantor during her life, and after her death in trust for "grandchild and namesake, Martha Woodward, daughter of A. H. Woodward," and to be delivered to her on arrival at twenty-five years of age, or sooner, at the discretion of her father. As to this trust, it is further provided that in case the grandchild does not survive the donor, or dies before time for delivery to her, it shall go to the

legal heirs of such granddaughter. The grandchild then had brothers and sisters living.

Then follows the trust we are to construe. As to this it should be further noted that Mrs. Bertha W. Underwood, a daughter taking one-third, had no children, and would have none. So, it was provided that if she be not living on the termination of the trust, her share should go, one half to her son, A. H. Woodward, if living, and if not, to his children, and the other half to "the children of my daughter, Margaret W. Hopkins."

It is manifest the trust we are dealing with is testamentary in character; aims at a distribution of the trust property upon the termination of the trust at or subsequent to her death. Indeed, the instrument declares certain provisions are in lieu of provisions made in a prior will.

The general scheme of the will, so to speak, is a division share and share alike among her children or their representatives under the statutes of distribution.

In clause (d) above quoted the direction is to "divide" and to "deliver" to those named, the natural objects of her bounty, as if the property were already theirs, and the time had come for division and delivery to them.

■ Every one knows that "child" or "children" in common usage means descendant or descendants of the first degree; and "grandchild" or "grandchildren" designates those of the second degree. The legal or technical meaning is the same; in fact, this became the legal meaning because the law looks to the intent as expressed in the words used. In the absence of something in the will, construed as a whole, in the light of the subject-matter and the situation with which the testator is dealing, disclosing a different intent, such words will be given their usual and technical meaning. Margaret E. Spencer v. Title Guarantee Loan & Trust Co., (Ala. Sup.) 132 So. 730;[1] Wilson v. Rand, 215 Ala. 159; 110 So. 3; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; Edwards v. Bender, 121 Ala. 77, 25 So. 1010; Rosenau v. Childress, 111 Ala. 214, 20 So. 95; Continental Life Ins. Co. v. Webb, 54 Ala. 688; McGuire v. Westmoreland, 36 Ala. 594; Scott v. Nelson, 3 Port. 452, 29 Am. Dec. 266.

The same authorities recognize that to ascertain and give effect to the intention of the grantor or testator, the great end of all construction, the term "children" may be and often is enlarged to include "grandchildren."

An oft-quoted rule in this regard ranges such cases into two classes.

"1st, from necessity—where the will would remain inoperative, unless the sense of the

word 'children' were extended beyond its natural import and, 2d, where the testator has clearly shown, that he did not intend to use the term 'children' in its proper and actual meaning, but in a more extensive sense." McGuire v. Westmoreland, 36 Ala. 595.

This does not mean that the facts and circumstances surrounding the testator with which he was necessarily dealing at the time are not to be looked to in finding what is shown by the will as a whole. Indeed, the first class of cases named in this rule must be ascertained in precisely this way.

It may be well said the first class is included within the second.

■ Accordingly, the inclusive rule, as well stated in Wilson v. Rand, supra, is:

"* * * The word 'child' or 'children' has been often construed when used in wills as including grandchildren, where it can be gathered from the entire instrument and surrounding facts and circumstances that it was the intention to use the word or words in the broader" sense. (215 Ala. 160, 110 So. 3, 4.)

An examination of the cases here and elsewhere shows this rule is often applied where the general scheme of the will shows a purpose to distribute the estate among the natural objects of the testator's bounty, share and share alike. In such case there is a strong presumption against an intention to disinherit.

■ There is no evidence here that Mrs. Woodward was wanting in affection for her deceased granddaughter, Josephine, or for her surviving child, Joseph W. Simpson, a greatgrandchild of Mrs. Woodward. The contrary appears. She evidently knew Mrs. Hopkins would not have another child. Moreover, in the very next paragraph she takes note of that fact as to Mrs. Underwood, and makes provision in the event of her death before the trust is terminated, for her share to be divided, and there again designates the "children" of Mrs. Hopkins as takers.

To be sure she recognized in other provisions of the will the distinction between "child" and "grandchildren." Certainly she also knew the difference between "child" and "children"; knew Mrs. Hopkins had only one "child" in the technical sense. Yet she said "children" of Mrs. Hopkins. "Children" (plural) was meaningless unless meant to include the daughter, Margaret, and Joseph, the grandson, as the representative of his mother, Josephine.

That the document was drawn by a skilled attorney, who, however, knew nothing and was told nothing, other than as shown in the will, touching Mrs. Woodward's personal feelings for or relations to any of her kindred,

[1] Post, p. 485.

cannot overcome the natural and obvious intention under all the circumstances. Indeed, the law itself, as written into our statute of distribution of the personal estate, Code, § 7374, employs the word "child" or "children" to include "grandchild" or "grandchildren," as representative of the ancestor or ancestors in fixing the share of the widow. See Phillips v. Lawing, 150 Ala. 186, 43 So. 494.

We hold that by this trust instrument Mrs. Woodward meant the "children" of Mrs. Hopkins to include her daughter Margaret and Joseph W. Simpson, representing his mother, Josephine, in the division of Mrs. Hopkins' share.

In addition to our own cases, supra, we cite the following illustrative cases from other states: Fuller v. Martin, 96 Ky. 500, 29 S. W. 315; Huntress v. Place, 137 Mass. 409; Barnhill v. Sharon, 135 Ky. 70, 121 S. W. 983; Farmers' Trust Co. of Mt. Holly v. Borden, 83 N. J. Eq. 222, 89 A. 985; Smith v. Miller (Ky.) 47 S. W. 1074; In re Walker's Estate, 240 Pa. 1, 87 A. 281. See, also, 28 R. C. L. p. 230.

The case of Spencer v. Title Guarantee Loan & Trust Co., supra, considered along with this case, recognizes the rules here applied. That case is differentiated from this in that the testator manifested a different intent in dealing with the income and with the corpus of the property involved.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.

