22 So.2d 435

### BENNERS v. FIRST NAT. BANK OF BIRMINGHAM et al.

#### 6 Div. 321.

Supreme Court of Alabama.

May 17, 1945.

Rehearing Denied June 14, 1945.

Cabaniss & Johnston, of Birmingham, for appellee executor.

Leader, Hill, Tenenbaum & Perrine, of Birmingham, for appellees Sallie and Flora Blach.

Augustus Benners and Benners, Burr, Stokely & McKamy, all of Birmingham, for appellants.

STAKELY, Justice.

Samuel Blach died June 21, 1928. On June 29, 1928, his will was admitted to probate and letters testamentary granted to the First National Bank of Birmingham. By his will Samuel Blach conferred powers on the Bank both as executor and as trustee and directed that after the payment of his debts, the remainder of his estate should be the subject of a trust to be administered by the Bank as trustee. The pertinent portion of his will is as follows:

"(d) So long as my sisters, Sallie Blach and Flora Blach survive, the trustee shall pay to them, and to the survivor of them, and in the event my sister, Millie B. Sander becomes a widow, to her, out of the income of my estate, and if the income be not sufficient therefor, out of the principal thereof, annually the sum of Ten Thousand Dollars ($10,000.00) each, such payments to be made in such sums and at such times as my sisters, or either of them, may respectively request. The trust shall be considered as dating from my death and my executors are directed to make the payments herein provided for pending the delivery of the assets of my estate to the trustee.

"(e) On the death of both of my said sisters, Sallie Blach and Flora Blach, and of my sister, Millie B. Sander; if she becomes a widow before the death of the survivor of said Sallie Blach and Flora Blach, the trust hereby created shall terminate and end, and the trustee shall then divide the trust estate between my brothers Simon Blach and Colman Blach and my sisters Berdie Lowenstein (and Millie B. Sander if said Millie B. Sander be then living and is a widow), and if any of them be dead at

that time leaving child or children, the child or children surviving at that time shall take the interest of their deceased parent.

"It is my intention that my sister, Millie B. Sander, shall not receive anything from my estate during the lives of Sallie Blach and Flora Blach unless she shall become a widow during such period. In the event she does become a widow, whether before or after my decease but during the lifetime of Sallie Blach or Flora Blach, she shall receive, during her life time, the benefits of the provision made for her in paragraph 'd' of Section Second hereof."

Samuel Blach left no widow, child or parent surviving. His next of kin are shown as follows:

1. Simon Blach (brother who died March 14, 1936)
    (a) Mervin A. Blach, son
    (b) Julius Blach, son
2. Colman Blach (brother who died April 12, 1943)
    (a) Rosalie Blach (widow)
    (b) Jean B. Adams (daughter)
    (c) Tekla B. Wolf (daughter)
    (d) Ralph C. Blach (died in 1938 prior to Colman Blach)
        (d–1) Ralph C. Blach, Jr. (son of Ralph C. Blach)
        (d–2) Ivan K. Blach (son of Ralph C. Blach)
        (d–3) Colman Blach II (son of Ralph C. Blach)
3. Sallie Blach (sister)
4. Flora Blach (sister)
5. Berdie Lowenstein (sister)
6. Millie B. Sander (sister)
7. Max Blach (brother died in 1944)
    (a) Harold B. Blach
    (b) Alma B. Loeb

It should be noted that Colman Blach II, appellant's ward, is a grandson of Colman Blach, who was a brother of the testator and a co-beneficiary upon the termination of the trust created under the will, provided there are any trust assets remaining at the termination of the trust.

The administration of the estate has never been completed. Accordingly, the trustee has not taken charge of the estate.

The bill of complaint in the present case was filed in equity by the First National Bank of Birmingham in its capacity as executor under the will of Samuel Blach, deceased. Copy of the will is attached, as Exhibit A, and made a part thereof. The

next of kin of the decedent are named as respondents therein. All are of age except Colman Blach II, the ward of appellant.

The bill alleges that the estate owes approximately $60,000, and sets forth the assets of the estate. It alleges that under paragraph (d) of the will the respondents, Sallie Blach and Flora Blach, were bequeathed an annual legacy of $10,000 to each and that the unpaid accumulated annuities, after crediting certain payments thereon, amount to approximately $268,000 at the time of the filing of the bill. The bill further alleges that Sallie Blach and Flora Blach claim that the unpaid accumulated annuities far exceed the value of the assets and that the other beneficiaries will not receive anything from the estate in any event.

The original bill, among other things, seeks the removal of the administration of the estate to the equity court and prays that after payment of the debts owing by the estate, the assets of the estate be turned over to Sallie Blach and Flora Blach in satisfaction of their accumulated annuities, it being alleged that Sallie Blach and Flora Blach propose to advance cash in the amount of $60,000 in settlement of the indebtedness owing by the estate, provided all of the remaining assets of the estate shall be turned over and transferred to them in satisfaction or partial satisfaction of their annuities accrued to date. The original bill concludes with a prayer for general relief.

By amendment to the bill the complainant alleges that there has been actively asserted the contention that the annuities provided for in paragraph (d) are not cumulative and are not proper charges against the assets of the estate until the debts of the estate shall have been paid in full and that complainant has not so construed the will and since the determination of the question is vital to the proper administration and distribution of the estate, complainant seeks a declaratory judgment construing the meaning of paragraph (d).

The administration was duly ordered removed to the Circuit Court in Equity.

All the respondents except Tekla B. Wolf, against whom a decree pro confesso was rendered, and except the three grandsons of Colman Blach, filed answers admitting the allegations of the bill. The three grandsons denied the averments of the bill. The appellant, as guardian ad litem of Colman Blach II, made his answer a cross-bill, which not only denied the allegations of the bill, among other things expressly denying that the annuities were cumulative, but in effect (1) charged that there was a conspiracy between the Bank and certain of the respondents to prevent the three sons of Ralph Blach from sharing in the distribution of the estate; (2) questioned the validity of the debts of the estate; (3) attacked the partial settlements previously made by the Bank; and (4) sought an accounting from the Bank. The following were made respondents to the cross-bill: Sallie Blach, Flora Blach, Mervin Blach, Julius Blach, Rosalie Blach, Tekla B. Wolf, Walter Wolf, and the First National Bank of Birmingham.

In the answer of these respondents to the cross-bill, it was denied that the sons of Ralph Blach, deceased, were entitled to share in the distribution of the estate.

The decree, from which this appeal is taken, (1) denied the prayer of the executor to make the proposed settlement with the beneficiaries, Sallie Blach and Flora Blach; (2) held that the annuities are cumulative and constitute a charge upon the assets of the estate, subject to the valid and subsisting debts of the estate; (3) held that the term "child or children" did not include appellant's ward, Colman Blach II or those of his class and denied the relief sought by Colman Blach II, under his cross-bill; and (4) directed the executor to file its accounts.

Grounds upon which a reversal is sought may be classified as I (The procedure was improper), II (The so-called annuities are not cumulative, do not constitute a charge on the assets of the estate and are barred by laches or the statute of limitations) and III (The term "child or children" in the will does include Colman Blach II and those of his class and, accordingly, they have an interest in the estate and can question the accounts of the Executor).

I. The jurisdiction of the court is attacked by appellant. To determine this question we should proceed to the heart of the inquiry, which is to see if the power of the court was properly invoked to construe the will, not only as to the effect under the will regarding the annuities, but also as to the meaning of the expression "child or children." We say this because there can be no doubt of the power of the court, if properly invoked. The jurisdiction of the court could arise on either one of two theories.

First, § 139, Title 13, Code of 1940, provides for the removal of administration of estates to the circuit court as a matter of right. In the case of Warrick v. Woodham, 243 Ala. 585, 11 So.2d 150, 160, 144 A.L.R. 1223, this court held that when the administration of an estate is once removed from the probate court to an equity court, "the jurisdiction with which the equity court becomes thus vested comprehends the judicial power to make all orders or decrees necessary to the administration of the estate including the construction of the will."

Second, under the Declaratory Judgment Act, § 159, Title 7, Code of 1940, it is provided as follows: "Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto: To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or other; or to direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

In this connection see Montgomery v. Montgomery, 236 Ala. 161, 181 So. 92.

■ And so we shall consider the pleading to see if the jurisdiction of the court was invoked to construe the will in the aspects referred to above. The amendment to the original bill sets forth that the contention was being advanced that the annuities are not cumulative and are not charges on the assets of the estate and concludes with the prayer "that this Court enter a declaratory judgment construing the meaning of paragraph (d) of the will of Samuel Blach, Exhibit A, attached, in respect of the questions raised as more particularly referred to herein." Appellant and his two brothers answered the amendment to the effect in substance that there was no need for a declaratory judgment construing the will, because "the ascertainment and decree by the court of what if any sums are due on the so-called annuities given to Sallie Blach and Flora Blach by the will of Samuel Blach is necessarily involved in a decree of the Court on the bill." In other words it is asserted that the original bill raised the question and action un-

der the amendment was unnecessary. It is true that there was no prayer for construction of the will in the original bill, but there was a prayer for general relief. "The nature of a bill in equity is not determined by its prayer, but the substance of the allegations, when there is a prayer for general relief." State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342, 346. Looking then to the substance of the allegations and not to their mere form, we think that the court's jurisdiction was invoked not only by the original bill, but also by the cross-bill and answer thereto, to determine all questions regarding the annuities, which necessarily includes construction of the will regarding the annuities.

■ We apply the same method to see if the power of the court was invoked to construe the meaning of the words "child or children" in the will, even though there was no express request to construe the will in this regard. Appellant's cross-bill asserted that he and his two brothers were entitled to take under the will after the death of Sallie Blach and Flora Blach and prayed that the cross-respondents be enjoined from attempting to exclude appellant and his brothers from sharing in the estate of Samuel Blach. The answer to the cross-bill challenged the cross-complainant's contention that he and his brothers were beneficiaries under the will. Clearly it appears that it must be determined whether or not Colman Blach II, who was a grandson, is embraced within the class, designated as "child or children," in order to determine whether or not he has an interest in the estate. We think that we can also proceed to construe the will in this respect.

■ II. Appellant contends that the claims of Sallie Blach and Flora Blach as to a portion of the annuities are barred by the statute of limitations of six years. Code 1940, Tit. 7, § 21. However, the statute of limitations does not run between trustees and cestuis que trustent as long as the trust relationship exists. This principle is well stated in Perry on Trusts, 7th Ed., Vol. 2, § 863, p. 1468, as follows: "As between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and knowledge thereon on the part of the cestui * * *. The trustee must clearly

repudiate the trust and assume an adverse position, with notice to the cestui, before the statute can begin to run. * * * The mere fact that money due the cestui is allowed by him to remain in the trustee's hands does not change the nature of the debt. It continues to be a trust debt, upon which neither bankruptcy of the trustee nor the statute of limitations can take effect. Accounts have been decreed against trustees, extending over periods of thirty, forty, and even fifty years. The relations and privity between trustee and cestui que trust are such that the possession of the one is the possession of the other, and there can be no adverse claim or possession during the continuance of the relation. * * * This rule applies to all acting as trustees, whether regularly appointed or not. It also applies to all who stand in a fiduciary relation to others, as executors, administrators, guardians, or agents. A cestui que trust cannot set up the statute against his co-cestuis que trust, nor against his trustee."

In keeping with the foregoing principle this court in the case of Whetstone v. Whetstone's Ex'rs, 75 Ala. 495, which dealt with questions relating to a trust, said: "What we have said above is conclusive to show, that neither lapse of time nor the statute of limitations affects the questions raised by this bill. When there is a continuing trust, with active duties required of, and performed by the trustee, the case is analogous to a running, mutual account, and time does not run. Each act done under, or in recognition of the trust, is a renewal of the obligation it imposes."

In the case of Cruse v. Kidd, 195 Ala. 22, 70 So. 166, 168, 2 A.L.R. 36; this court said: "As between the trustee and the cestui que trust, in case of an express trust, lapse of time does not bar the trust estate."

Even in the case of a resulting trust, this court has held that the statute of limitations does not begin to run so long as there is a recognition of such trust by the trustee, as in the case of an officer of a corporation as a defense to a suit by the corporation to call the officer to account. Jacksonville Public Service Corporation et al. v. Profile Cotton Mills, 236 Ala. 4, 180 So. 583.

■■ It is quite certain that the valid debts presented against the estate constitute a first lien and charge on the assets of the estate and the annuities could not be paid until the debts of the estate had first been paid, or certainly until a proper reserve out of the assets of the estate had been set up for the payment thereof. The trustee, who in this case is the executor, had full discretion to determine when the time was propitious to sell the assets of the estate or otherwise arrange for payment of the debts of the estate. If the trustee unduly delayed regarding these matters, certainly under these circumstances the cestuis que trustent could not be penalized. We consider it clear that neither laches nor the statute of limitations constitutes a defense to the payment of the annuities.

■ Under Item (d) of the will the trustee is directed to pay to Sallie Blach and Flora Blach during their lifetime, and to the survivor of them (and under certain conditions which have not occurred, to the sister, Millie B. Sander) out of the income of the estate and if the income is not sufficient, out of the principal thereof, annually the sum of $10,000 each. It is specifically provided that the trust shall be considered as dating from the testator's death and the executors are directed to make the payments pending the delivery of the assets of the estate to the trustee. It follows that it is immaterial whether or not the executorship has been terminated and the assets delivered to the trustee. The trust applies equally to both executor and the trustee. The direction to pay is unequivocal and unconditional and as stated above, payable out of the corpus if the income is not sufficient.

In the case of Bradberry v. Anderson, 240 Ala. 681, 200 So. 762, the will provided as follows: "After all indebtedness of my estate has been paid I desire the residue or balance of my estate to be held by the executor for the benefit and comfort of my wife, S. F. Anderson, both personal and real, so long as she lives."

This court in construing said provision, held as follows: "Such a legacy as that here involved is akin to an annuity payable out of the estate. An annuity usually is for a definite sum. Here the sum is not fixed, but it fluctuates with the need of the widow to secure her 'comfort.' It is not specified in the will that the amount to be applied to her benefit and comfort shall be payable out of the income alone. Nor is it specified that it shall be a charge upon the corpus. But a fair interpretation is that it shall be payable regardless of the source of the amount needed to do so. If there is no indication in the will or attendant facts that the annuity shall be paid out of income rather than corpus, resort may be had, if

necessary, to the corpus. 3 Corpus Juris 213, note 24; 3 Corpus Juris Secundum, Annuities, § 5(b), p. 1381; 2 Amer.Jur. 833, section 33; 2 R.C.L. 8, section 13; 69 Corpus Juris 1188, § 2511; Thompson v. Bank of Tuskegee, 199 Ala. 67, 74 So. 37."

In the case of Thompson v. Bank of Tuskegee, 199 Ala. 67, 74 So. 37, 38, the devise was as follows: "First, it is my will and desire that my beloved mother, Mary W. Thompson, shall receive out of my estate an annuity of $150 per month, to be paid to her on the first day of every month * * * as a monthly annuity during the term of her natural life."

In construing this provision, this court held: "We therefore hold that the complainant's annuity was a charge and lien upon all property owned by the testator C. W. Thompson at the time of his death, subject to the payment of his debts and his cash legacies provided by said will."

We think it follows that the annuities to Sallie Blach and Flora Blach constitute charges upon all the property owned by Samuel Blach at the time of his death, subject to the payment of his debts. And this is true though no specific provision is made for the sale of assets with which to pay the same.

Are the unpaid and past-due annuities cumulative? It may be noted here that the will shows that it was drafted by an expert. It would have been a simple matter for the will to provide that the annuities were not cumulative. The omission so to provide is significant.

We quote from 3 Corpus Juris Secundum, Annuities, § 5, p. 1381: "The question of whether deficiencies or arrears in an annuity are payable exclusively from accruing income or are chargeable on the corpus of the property set aside for payment on accumulated income depends on the intention of the grantor or donor as determined by a construction of the instrument creating the annuity."

We also quote from the same authority § 5 on pages 1381, 1382: "The corpus of the fund set apart for its payment is liable for arrears or deficiencies in an annuity where the instrument creating the gift clearly indicates that the annuity is charged on the corpus. The corpus may be resorted to where the income is insufficient to pay the annuity and there is no indication of an intent that the gift shall be paid out of the income rather than the corpus or if the annuity is made an unlimited and indefinite charge on rents and profits."

Where the annuity is payable under a trust as in the instant case, we quote from 65 Corpus Juris, p. 860: "It is the duty of a trustee to set apart a sufficient sum to produce the annuities given by the trust instrument, and the fund required to be set aside may be increased or reduced so as to carry out the settlor's intention. In the absence of an agreement by the beneficiaries to accept less, trustees must pay the full amount of annuities charged on the estate, and, if the income for any one year is insufficient for the purpose, resort may be had to income subsequently accruing, or to the corpus of the fund, unless a contrary intention is manifest in the terms of the trust instrument."

The case of In re Hekel's Estate, 205 Iowa 521, 218 N.W. 297, 298 was an action to construe the will of George Hekel. A paragraph in his will read as follows: "Fourth. I give, devise and bequeath all the rest, residue and remainder of my estate both real and personal unto R. B. Raines in trust however for the following purposes: The said Raines is to keep the same invested, five hundred dollars of the principal as an annuity to my sister, Mary Timson, during her lifetime, payable as follows: Five hundred dollars on the first day of January following my decease and said sum of five hundred dollars of principal and the interest on the principal sum on the first day of January of each year thereafter until her death or until the fund is exhausted. Should any of said property not be distributed as herein set forth during the lifetime of my said sister, the same shall be distributed at her death to my nephews, Fred Klotz, Louis F. Klotz, George Klotz, Joe Hekel, John Hekel, Julius Hekel, Edward Neindorf and George Neindorf."

The court in substance held that under devise in trust to pay annuity annually on first day of each year during life of annuitant, with remainder to designated legatees, the annual payments vested in annuitant as same fell due, and those due, but not paid, before her death, were payable to her administrator as against claims of legatees of remainder.

See also In re Toms' Estate, 84 Misc. 312, 147 N.Y.S. 550.

The case of Wagar v. Marshburn, 241 Ala. 73, 1 So.2d 303, 307, involved an in-

strument executed by a father and his two children whereby the father relinquished to his two children all rights which descended to him from his deceased wife and mother of the children, and whereby the father bequeathed to the children, equally, an undivided two-thirds interest in his estate, and the children agreed to pay their father $5,000 annually. This court held in construing the instrument that the $5,000 was cumulative. This court said: "If these contractees are indebted to decedent in any sum on account of their promise to pay him $5,000 a year during his life, the deficiency should be computed in making allowance for them under the testamentary contract."

We conclude that the annuities to Sallie Blach and Flora Blach are cumulative and that they are entitled to receive the full amount of past-due and unpaid annuities, subject first to the payment of the debts of the estate.

III. What is the status of the three grandsons of Colman Blach? Being grandchildren of Colman Blach, are they to be considered as included within the term "child or children" as used in the will of Samuel Blach? Under our authorities and the facts in the case, we do not think that they are included. There are two cases of controlling importance, the case of Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 485, 132 So. 730, and the case of Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 221, 132 So. 32, 34. In the first of these cases, under language substantially similar to the language in the case at bar, the grandchild was excluded. In the latter of the foregoing cases the grandchild was included. The rules for reaching a proper construction are well stated in the latter of the two cases as follows:

"Everyone knows that 'child' or 'children' in common usage means descendant or descendants of the first degree; and 'grandchild' or 'grandchildren' designates those of the second degree. The legal or technical meaning is the same; in fact, this became the legal meaning because the law looks to the intent as expressed in the words used. In the absence of something in the will, construed as a whole, in the light of the subject-matter and the situation with which the testator is dealing, disclosing a different intent, such words will be given their usual and technical meaning. * * *

"The same authorities recognize that to ascertain and give effect to the intention of the grantor or testator, the great end of all construction, the term 'children' may be and often is enlarged to include 'grandchildren.'

"An oft-quoted rule in this regard ranges such cases into two classes.

"'1st, from necessity—where the will would remain inoperative, unless the sense of the word "children" were extended beyond its natural import and, 2d, where the testator has clearly shown, that he did not intend to use the term "children" in its proper and actual meaning, but in a more extensive sense.' * * *

"Accordingly, the inclusive rule, as well stated in Wilson v. Rand [215 Ala. 159, 110 So. 3], supra, is:

"'* * * The word "child" or "children" has been often construed when used in wills as including grandchildren, where it can be gathered from the entire instrument and surrounding facts and circumstances that it was the intention to use the word or words in the broader' sense. * * *

"An examination of the cases here and elsewhere shows this rule is often applied where the general scheme of the will shows a purpose to distribute the estate among the natural objects of the testator's bounty, share and share alike. In such case there is a strong presumption against an intention to disinherit."

From the foregoing it is clear that the usual and ordinary meaning of the words "child or children" does not include a grandchild or grandchildren. The term "child or children" will be extended to embrace a grandchild or grandchildren in two instances. First, when it is necessary to make the will operative and, second, when it clearly appears that the testator intended to use the expression in its wider sense. There is no room in the case at bar for the operation of the first variation of the rule, as there was in the last of the above-mentioned cases, because Colman Blach, through whom the three grandsons claim, and who died subsequent to his son Ralph Blach, the father of the grandsons, was survived by the respondents, Tekla B. Wolf and Jean B. Adams, his daughters. At the time the will was signed in 1927 three of the children of Colman Blach were living. It therefore cannot be said that there was no one to meet the description of child or

children of Colman Blach when the trust had its origin.

■ . We conclude that there can be no application of the second variation of the general rule for a number of reasons. The will was drawn by an expert who can be presumed to have known the different interpretations given the expression and yet did not by express provisions of the will include grandchildren within the term.

"It is unquestionably the law that where the words 'child' or 'children' are used in a will, in a technical or legal sense, grandchildren are not included, especially so when the will is prepared by one skilled in the law and who is familiar with the technical or legal meaning of the words." Wilson et al. v. Rand et al., 215 Ala. 159, 160, 110 So. 3, 4.

Furthermore, Colman Blach II and his brothers and the other next of kin of Samuel Blach are not direct descendants of Samuel Blach. They are related collaterally. Under these circumstances, Colman Blach II and his brothers are not so clearly the natural objects of the testator's bounty as they might have been if they had been direct descendants.

Furthermore, the plan of the will not only does not follow a general scheme to provide for the kinsmen of the decedent upon a share and share alike basis, but actually appears to provide to the contrary. Since this is so, another frequent reason for the extended interpretation of "child or children" disappears. Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 221, 132 So. 32, supra.

The will makes no provision for one brother, Max Blach, or his children. Sallie and Flora Blach, as annuitants, are both put in a special class with respect to the bounty of the decedent. None of decedent's brothers are brought within the class of annuitants. One sister, Berdie Lowenstein, is not made an annuitant at all, and Millie B. Sander, another sister, only under certain circumstances. Special provision is made for the education of Colman Blach II and his brothers, the sons of Ralph Blach, a son of Colman Blach, and yet no such provision is made for Jean B. Adams and Tekla B. Wolf, the daughters of Colman Blach, as shown by the following provision of the will:

"Third:—I also give and bequeath to the said First National Bank of Birmingham, as trustee, when the same shall be payable and collected, the proceeds of a policy of life insurance issued upon the life of my nephew, Ralph C. Blach, in which the beneficiary is designated as 'Sam Blach, as trustee for Ralph Blach, Jr., Ivan Blach and Colman Blach, II,' who are sons of my said nephew, to be held by the said trustee under all the terms and conditions set out in paragraph second hereof in trust for the following uses and purposes, viz:

"The income and principal of said fund, or so much thereof as may be necessary, to be used for the education and support of the said Ralph Blach, Jr., Ivan Blach and Colman Blach, II, or the survivor of them. If the education of these children is completed without the expenditure of the entire fund, the trustee shall divide what is left and pay the same over to them, respectively, when the youngest of them reaches the age of twenty-one (21) years. If all should die before the period of division arrives, the trustee shall pay over what remains of this fund to such persons and in such shares as would be entitled to inherit the same from Ralph Blach under the laws of Alabama then in force had he owned such property and died intestate at such time."

The fact that the foregoing special provision for Colman Blach II and his brothers was made also tends to show that a general provision for their benefit was not intended. It should also be noted that the testator was careful to provide for disposition of the fund, the proceeds of the policy, according to the laws of Alabama, in the event all of the beneficiaries should die before the time of division. The absence of a similar provision to take care of the situation on the death of the annuitants is significant.

■ Accordingly, judged by the will itself, we do not think that Samuel Blach had in mind natural objects of his bounty on a share and share alike basis when he made the will. Therefore, it seems to us that the general rule of construction should apply, since the case is not clearly brought within either variation of the general rule. Accordingly, we conclude that since Colman Blach II and his brothers are not included within the term "child or children," they are not entitled to receive anything as residuary legatees under the will of Samuel Blach, deceased, and have no interest in the estate. Accordingly, they are not in a position to attack the partial settlements of the executor or question his ac-

counts or attack such arrangement as the trustee, creditors and remaining next of kin may wish to make for a disposition of the estate.

The decree of the lower court is without error and is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.