759 So.2d 538 (1999)
Carr McCORMACK III
v.
AmSOUTH BANK, N.A.
1971025.
Supreme Court of Alabama.
March 12, 1999.
Rehearing Overruled July 2, 1999.
W. Lewis Garrison, Jr., of Jackson, Garrison & Sumrall, P.C., Birmingham, for appellant.
*539 Larry B. Childs, Julia Boaz-Cooper, and Randall D. Quarles of Walston, Wells, Anderson & Bains, L.L.P., Birmingham, for appellee.
MADDOX, Justice.
This case arises out of a dispute between AmSouth Bank, N.A., and Carr McCormack III; these parties are, respectively, the trustee and the beneficiary of a trust. McCormack sued AmSouth, seeking damages based on several claims relating to AmSouth's alleged mismanagement of trust affairs. The trial court entered a summary judgment for AmSouth. McCormack appealed. For the reasons discussed below, we affirm.
AmSouth Bank was trustee of a trust (the "McCormack Trust"), established by Carr McCormack, Sr., the corpus of which included 4,000 shares of stock in Alabama By-Products Corporation ("ABC"). According to the terms of the trust, Carr McCormack III, the settlor's grandson (the plaintiff in this present action) was to receive the corpus of the McCormack Trust upon his father's death, which occurred on February 14, 1992. It appears undisputed that the trust terminated at that time. Four days later, the plaintiff placed the assets of the terminated trust into a revocable trust (the "Revocable Trust"), which also was to be managed by AmSouth.
The dispute giving rise to this appeal has its roots in the mid-1980s. In January 1985, in response to a tender offer, AmSouth tendered the shares of ABC under its control to Drummond Coal Company, Inc., for $75 per share. During the same period, a class action was filed in Delaware on behalf of all owners of ABC common stock as of December 4, 1984. That action, Hynson v. Drummond Corp., Civ. A. 7904, Del.Ch.1990 (not reported), was settled in early 1990.
In December 1985, yet another action was filed regarding Drummond's tender offer for ABC shares. The plaintiffs in that action sought a determination of the value of the shares at the time of the tender offer. The Delaware court that resolved that case determined that the shares had been worth $180.67 per share. Neal v. Alabama By-Products Corp., [Civ. A. 8282, Aug. 1, 1990] (Del. Ch.1990)(not reported in A.2d), aff'd, 588 A.2d 255 (Del. 1991).
After the Neal decision was released, AmSouth filed an action in Alabama, which this Court considered on appeal in Martin v. Drummond Co., 663 So.2d 937 (Ala. 1995). The Martin trial court entered a summary judgment in favor of Drummond. This Court held, in an opinion released on July 7, 1995, that the same claims had previously been brought in Hynson. AmSouth, as trustee, was a member of the Hynson class,[1] and it did not object to or opt-out of the settlement in that case. 663 So.2d at 940. Thus, this Court held, the Martin plaintiffs, including AmSouth, as trustee of the McCormack Trust, were bound to the Hynson settlement by the doctrine of res judicata. 663 So.2d at 948.
It is undisputed that the transaction whereby AmSouth tendered the ABC stock under its control to Drummond occurred in January 1985. The Delaware Chancery Court conducted a fairness hearing on the proposed settlement in Hynson in February 1990 and approved the settlement. AmSouth subsequently filed its complaint in the Martin action in May 1991. All of those events occurred during the life of the McCormack Trust. Following the termination of the McCormack Trust, AmSouth continued to represent the plaintiff in the Martin litigation, as authorized under the Revocable Trust.
*540 Carr McCormack III filed this present action against AmSouth on July 11, 1995. He alleged several causes of action related to AmSouth's failure to opt-out of the Delaware settlement. McCormack moved for certification of this case as a class action, but the trial court denied it. AmSouth subsequently filed a motion for, summary judgment, which the trial court granted.

I.
McCormack argues that the trial court erred in denying the class certification. AmSouth argues, on the other hand, that any appeal of that question is untimely, because, it argues, the order denying class certification was a "final" order and McCormack did not file a notice of appeal from that order within the 42 days allowed for an appeal from a final judgment. See Rule 4(a)(1), Ala. R.App. P.
In Butler v. Audio/Video Affiliates, Inc., 611 So.2d 330, 331 (Ala.1992), this Court addressed the character of an order denying class certification:
"Although we recognize that [an order denying class certification under Rule 23, Ala. R. Civ. P., is] an interlocutory order and as such does not fit within the formal rules of finality, we note that a denial of class certification effectively terminates the litigation as to all members of the class other than the original plaintiff; this is because it has a `death knell' effect of making further proceedings in the action impractical and because it finally determines a claim of right separate from and collateral to the rights asserted in the cause of action. Therefore, we hold that an order denying class certification is an appealable `final' order."
(Emphasis in original; footnote omitted.)
McCormack argues, in essence, that this Court's holding in Butler is either incorrect or should not be extended to apply in a situation such as is presented here. He argues that a class certification order is, "by [its] nature, not final." (Brief of appellant at 45.) He argues that such an order is "always subject to being reviewed by the trial court." Id. (Emphasis omitted.)
In arguing as he does, McCormack points to this Court's decision in First Alabama Bank of Montgomery, N.A. v. Martin, 381 So.2d 32 (Ala.1980). In First Alabama Bank, this Court was presented with an appeal from an order granting a class certification. On the question whether this Court had jurisdiction to hear an appeal from that order, this Court held that it did not, because, it held, such an order was not a "final" order. That is, it did not "put[] an end to all matters litigated or which ought to have been litigated with respect to a particular controversy." 381 So.2d at 33. As part of the rationale expressed by the Court in reaching that determination, the Court noted that the order certifying the class was not "final" because it was subject to modification. 381 So.2d at 33-34. McCormack argues that the same reasoning should apply with regard to orders denying certification of a class.
McCormack's theory that orders denying class certification should not be treated as "final" orders, because they are subject to modification, finds support in Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). In that case, the United States Supreme Court held that, under the Federal counterpart to our Rule 23, Ala. R. Civ. P., an order denying class certification in a federal court did not give rise to a right to appeal. This Court is aware of the rule adopted by the United States Supreme Court; nevertheless, in Butler, this Court expressly rejected the rationale and rule applied in the federal courts. Butler, 611 So.2d at 331, n. 1.
McCormack also argues that an order denying class certification is more in the nature of an interlocutory order than a final one and, therefore, that the order merges with the final judgment of the trial court, citing Superskate, Inc. v. Nolen, 641 So.2d 231 (Ala.1994), as support for the *541 proposition that interlocutory orders merge with final judgments. Because that order had merged with the final judgment, he argues, this Court would have jurisdiction to hear an appeal concerning an order denying class certification when it considered the appeal following the final judgment. Rule 4(a)(1), Ala. R.App. P., lends some support to that argument, stating: "On an appeal from a judgment or order a party shall be entitled to a review of any judgment, order, or ruling of the trial court."
While the language of Rule 4(a)(1) would seem to support the argument that this Court, or the Court of Civil Appeals, could entertain, on an appeal following the final disposition of the entire case, the question whether the trial court erred in denying class certification, such an interpretation would not be in harmony with this Court's cases holding that a failure to appeal within the designated time deprives the appellate court of jurisdiction to consider the issue appealed. Such an interpretation would also be at odds with our holding in Butler. In that case, this Court recognized that an order denying class certification was in fact interlocutory, but the Court nonetheless recognized it as a final order for purposes of determining appealability. 611 So.2d at 331. Thus, an order denying class certification does not fit neatly within the categories of "interlocutory" and "final" orders, but this Court's determination as to the nature of such an order is clear. It is a "final" order and may be appealed, as this Court held in Butler. The failure to file an appeal within the period allowed divests an appellate court of jurisdiction to consider the issue that is the subject of the untimely appeal. Hayden v. Harris, 437 So.2d 1283, 1287 (Ala.1983).
We conclude that McCormack's failure to appeal the order denying class certification within the period allowed for an appeal prevents this Court from considering now whether the trial court erred in denying that certification. Accordingly, as to that issue, the appeal is dismissed.

II.

A.
McCormack also argues that the trial court erred in entering a summary judgment for AmSouth on his claims alleging a breach of fiduciary duty. The trial court, in its summary judgment, held that any claims arising out of AmSouth's management of the McCormack Trust were barred because McCormack filed this action more than two years after the McCormack Trust had terminated.
The statute of limitations applicable to a case alleging a breach of fiduciary duty allows two years to file the action. § 6-2-38(l). See also Tonsmeire v. AmSouth Bank, 659 So.2d 601, 604 (Ala.1995). Further, the statutory period begins to run at the point when the fiduciary relationship between the trustee and the beneficiary is terminated. Id. The question, then, is this: When did the fiduciary relationship between AmSouth and McCormack end? AmSouth argues, and the trial court found, that the fiduciary relationship ended with the termination of the trust, i.e., on February 14, 1992.
McCormack argues that the fiduciary relationship was, rather, a continuing one, pointing to several factors that, he argues, support his position. First, McCormack points out that when the McCormack Trust terminated, he rolled the trust assets over into the Revocable Trust, of which AmSouth also was the trustee. Second, he notes that, in the Martin action, AmSouth failed to amend its complaint to substitute the Revocable Trust for the McCormack Trust as a plaintiff. Third, McCormack argues that AmSouth assessed the Revocable Trust for the cost of legal representation in the Martin litigation; the majority of that cost had accrued during the life of the McCormack Trust. He argues that these factors indicate that AmSouth treated the Revocable Trust as a *542 continuation of the McCormack Trust and, therefore, that the fiduciary relationship was a continuing one that did not expire with the technical termination of the McCormack Trust.
In Benners v. First National Bank of Birmingham, 247 Ala. 74, 22 So.2d 435 (1945), this Court held:
"[T]he statute of limitations does not run between trustees and cestuis que trustent as long as the trust relationship exists. This principle is well stated in Perry on Trusts, 7th Ed., Vol. 2, § 863, p. 1468, as follows: `As between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the cestui.... The trustee must clearly repudiate the trust and assume an adverse position, with notice to the cestui, before the statute can begin to run.... The mere fact that money due the cestui is allowed by him to remain in the trustee's hands does not change the nature of the debt. It continues to be a trust debt, upon which neither bankruptcy of the trustee nor the statute of limitations can take effect. Accounts have been decreed against trustees, extending over periods of thirty, forty, and even fifty years. The relations and privity between trustee and cestui que trust are such that the possession of the one is the possession of the other, and there can be no adverse claim or possession during the continuance of the relation....'
"In keeping with the foregoing principle this court in the case of Whetstone v. Whetstone's Ex'rs, 75 Ala. 495 [(1883)], which dealt with questions relating to a trust, said: ... `When there is a continuing trust, with active duties required of, and performed by the trustee, the case is analogous to a running, mutual account, and time does not run. Each act done under, or in recognition of the trust, is a renewal of the obligation it imposes.'"
247 Ala. at 79-80, 22 So.2d at 438-40.
From a first reading, this language from Benners might seem to support McCormack's argument. AmSouth's actions, and the fact that McCormack rolled the trust corpus from the McCormack Trust to the Revocable Trust while also naming AmSouth as trustee of the Revocable Trust, could suggest the conclusion that AmSouth and McCormack had a kind of continuing fiduciary relationship. That conclusion might lead one, in turn, to conclude that the statute of limitations could not bar the breach-of-duty claims McCormack makes in this case. However, Benners did not involve a situation, like this one, where one trust clearly terminated and a new trust was created, albeit with the same parties in the roles of trustee and beneficiary.
AmSouth cites a Tennessee case involving a similar factual situation; we find that case instructive. In Clark v. American National Bank & Trust Co. of Chattanooga, 531 S.W.2d 563 (Tenn.Ct.App.1974), the plaintiffs were beneficiaries of two trusts that were administered by the same trustee. One trust expired, and the assets of that trust were transferred to the second trust, which had not expired. The plaintiffs later sued the trustee for an alleged breach of trust with regard to the expired trust. The plaintiffs made no claim concerning the second, unexpired trust. The Tennessee court held:
"[T]he corpus of the first trust became the personal property of the [beneficiaries upon the termination of the first trust] to do with as they saw fit. They saw fit to place that corpus in another trust already created. Therefore, the statute of limitations in this case would begin to run on the first trust on the date of its termination...."
Clark, 531 S.W.2d at 568.
We conclude that the rationale adopted by the Tennessee court in Clark applies in this case. The statutory limitations *543 period allowed on a claim of breach of fiduciary duty in regard to an express trust begins to run on the date of the termination of the trust. Tonsmeire, 659 So.2d at 604. Despite the factors pointed out by McCormack, it is clear that the McCormack Trust was an express trust, and that it terminated on February 14, 1992. The fact that four days later McCormack made what can be described as a voluntary decision to place the assets of the McCormack Trust, which had become wholly his on the date of that trust's termination, in a new trust for which he also named AmSouth the trustee does not alter the necessary conclusions that the fiduciary relationship between AmSouth and McCormack arising from the McCormack Trust ended on February 14, 1992, and that the period allowed by the statute of limitations began to run on that date as to any claims McCormack might have had arising from AmSouth's management of the McCormack Trust.

B.
McCormack next argues that, even if there was no continuing fiduciary relationship, AmSouth should be equitably estopped from asserting the statute of limitations as a defense. In City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159 (Ala.1989), this Court summarized the law applicable in situations where one party asserts equitable estoppel as a bar to another party's pleading the statute of limitations as a defense:
"In Mason v. Mobile County, 410 So.2d 19 (Ala.1982), this Court held that if a defendant either fraudulently or innocently represents to the plaintiff that he will remedy a problem, and relying on these representations the plaintiff is induced not to file a lawsuit or take any action, the defendant may be estopped from raising the statute of limitations as a defense. Additionally, in Arkel Land Co. v. Cagle, 445 So.2d 858 (Ala.1983), we held that if a defendant represents that a lawsuit is unnecessary because he intends to take care of the problem he is likewise estopped from raising the statute of limitations as a defense."
Cochrane Roofing, 547 So.2d at 1167. This Court also pointed out, though, in Cochrane Roofing, that application of the doctrine of equitable estoppel must be tempered by applying "a standard of reasonable reliance." Id. This Court held that it was not reasonable for the City of Birmingham to delay suing until after the limitations period had expired, when the City, for nearly six years before the limitations period expired, had been aware that the underlying problem had not been fixed and had been aware of its right to sue. Id.
It appears from the record that McCormack received at least two letters from the law firm AmSouth had hired to represent its trust clients in the Martin litigation, one letter in April 1993 and another in September 1993. In those letters, McCormack was informed of the progress of the Martin litigation. McCormack argues that those letters, coupled with AmSouth's continuing efforts in the Martin litigation after the termination of the McCormack Trust, would have made it unreasonable for him to sue AmSouth, the trustee of the Revocable Trust, while that litigation was still pending and could potentially result in benefit to him. The Martin litigation did not terminate until this Court released its opinion in that case on July 7, 1995; McCormack filed this action four days later. Based upon these factors, he argues that AmSouth ought to be estopped from relying on the statute-of-limitations defense.
Given the pending litigation, and the letters that McCormack received, we conclude that AmSouth did indeed represent to him that the problem would be resolved. Thus, the first prong of the equitableestoppel test is met, but we must next determine whether McCormack relied on those representations and did so to his detriment.
*544 AmSouth argues that McCormack admitted in his deposition that he did not consider suing AmSouth until 1995, when he consulted a lawyer regarding another matter. The transcript of McCormack's deposition, which took place on November 27, 1995, includes the following exchange:
"Q: When did you first consider suing AmSouth?
"A: I think we've already covered this, too, but if necessary, we can go back and redo it. When I first went to Massey & Stotser about the Ramsey McCormack thing some nine months ago, ten months ago, as part of discussing with them the
"[Plaintiff's counsel]: Now, don't tell him anything they told you, okay? Your discussions with them are privileged.... All he's asking is when did you consider it.
"A: Eight months agoseven months ago, eight months ago.
"Q: Other than discussions with those lawyers, was there any event that caused you to consider suing AmSouth?
"A: None that I recall."
(McCormack deposition at 147-48.) That exchange took place on November 27, 1995. McCormack's testimony makes it clear that he did not consider suing AmSouth until sometime between 7 and 10 months before his deposition, or, at the earliest, around January 1995. As discussed above, the McCormack Trust had terminated on February 14, 1992. Thus, from McCormack's testimony, it is clear that he did not consider suing AmSouth until approximately three years after the McCormack Trust had terminated.
In light of the fact that McCormack did not consider suing AmSouth until about a year after the expiration of the two-year statutory limitations period, it is logical to conclude that McCormack cannot reasonably argue that he "rel[ied] on [AmSouth's] representations [and was] induced not to file a lawsuit or take any action." Cochrane Roofing, 547 So.2d at 1167. Stated differently, the trial judge was authorized to conclude that, because McCormack did not even consider filing a lawsuit until after the statutory period had run, the doctrines of equitable estoppel would not apply.
AmSouth's theory of the law is that McCormack cannot be found to have been induced not to file a lawsuit unless he first had the impulse to file one. AmSouth says that in order for one to be induced to refrain from doing something, he must first have the impulse to do it. The reverse argument, of course, would be that AmSouth's representations were such that they caused McCormack not to think of filing the lawsuit and that his failure to think of suing AmSouth actually is proof that AmSouth's representations succeeded in convincing him that he should not sue.
Having considered the arguments and the record, we accept the trial judge's conclusion that AmSouth has the better argument on this point. For the doctrine of equitable estoppel to apply, McCormack must have relied upon AmSouth's representations. In its definition of "reliance," Black's Law Dictionary carries the following statement: "[The term `reliance'] bespeaks a voluntary choice of conduct by the person harmed and [implies] that the person exercising it can decide between available alternatives." Black's Law Dictionary 1291 (6th ed. 1990).
The trial court correctly determined that McCormack's claims were barred by the statute of limitations.

C.
McCormack next argues that the statute of limitations does not bar the claims he presents in this action because either the running of the limitations period was tolled until this Court released its Martin opinion or his cause of action did not accrue until this Court released its Martin opinion. The argument that the statute was tolled until Martin was released is, in essence, a restatement of the argument that *545 AmSouth is estopped from asserting the statute because it was engaged in the Martin litigation.
As support for his argument that his cause of action did not accrue until this Court released its Martin opinion, McCormack argues that there is no injury until there is a completed wrong. Further, he argues that there was no completed wrong here until this Court finally decided the Martin appeal. He relies on System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). We believe that his reliance on that case is misplaced. In Boykin, a corporation's chief executive officer caused the corporation to make certain payments to him. As a result of those payments, the Internal Revenue Service later assessed a penalty against the company. This Court held that there had been no completed wrong until the IRS assessed its penalty. Boykin was a plurality decision; the reasoning employed by the plurality was that "[a]t best there existed potential tax liability and consequences when the payments were made to Boykin." 683 So.2d at 421 (emphasis in original).
In contrast to Boykin, this case does not present a situation where the parties faced the possibility of a potential future loss to the assets of the trust. Any actionable breach of fiduciary duty had already occurred, either when AmSouth agreed to sell Drummond the shares of ABC stock in AmSouth's control or when the McCormack Trust terminated without AmSouth's having made required disclosures.

III.
McCormack also argues that the trial court erred in entering AmSouth's summary judgment as to his fraud claim because, he argues, he was not put on notice of the potential fraud until sometime after this Court had released its decision in Martin. In his brief, McCormack does not provide a more specific indication of when he claims to have become aware of the facts giving rise to his fraud claims.
AmSouth argues that McCormack, for over two years before he filed his action, had been on notice of the facts giving rise to his fraud claim and, therefore, that the summary judgment was proper as to that claim. In his deposition, McCormack admitted to having learned at least as early as July 1992 that the Hynson settlement might erect a bar to the Martin claims. Further, he testified that he had already been aware that his father believed that the price AmSouth accepted for the ABC shares was too low.
From the record, it appears undisputed that McCormack was aware of the key facts regarding his fraud claim as early as July 1992, more than two years before he filed this action in July 1995. Therefore, the trial court properly concluded that McCormack's fraud claim was barred by the two-year statute of limitations, § 6-2-38, Ala.Code 1975.
Because of the holding we have just made, we pretermit any discussion of the trial court's additional conclusion that on its merits McCormack's fraud claim failed as a matter of law.

IV.
McCormack also argues that the trial court erred in denying his motion to recuse. McCormack argues that because Judge William A. Jackson, the trial judge in this case, is a director of a bank holding company his handling this case presents an appearance of impropriety. McCormack does not allege that Judge Jackson had any relationship with AmSouth that raised any appearance of impropriety. AmSouth, on the other hand, argues that the trial judge did not have a conflict and that his refusal to recuse himself was therefore proper.
In Henderson v. G & G Corp., 582 So.2d 529, 530 (Ala.1991), this Court wrote:
"[T]here is a presumption that a judge is qualified and unbiased, and ... one alleging to the contrary has a substantial burden of proof. Banks v. Corte, 521 *546 So.2d 960 (Ala.1988). The test for recusal is whether a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would conclude that there is a reasonable basis for questioning the judge's impartiality."
That test is consistent with the provisions of Canon 3 C(1), Canons of Judicial Ethics. See Gas Utilities Co. v. Southern Natural Gas Co., 996 F.2d 282 (11th Cir.1993), in which the United States Court of Appeals for the Eleventh Circuit refused to hold that a federal trial judge who owned stock in one bank was required to recuse in a case in which a different bank was a party and in which the results of the case, it was argued, could have had a negative impact on the banking industry. Based on the facts presented to us, we cannot conclude that it was an abuse of discretion for the trial judge to refuse to recuse himself.

V.
Finally, McCormack argues that the trial court erred in granting AmSouth's motion to dismiss his claim for recovery of hereditaments. That claim, he argues, would fall under the 10-year limitations period of § 6-2-33, Ala.Code 1975, which provides, in part:
"The following must be commenced within 10 years:
". . . .
"(2) Actions for the recovery of lands, tenements, or hereditaments, or the possession thereof, except as otherwise provided in this article...."
McCormack, however, cites no authority for the proposition that Alabama recognizes as a hereditament anything other than a right associated with real property. See, e.g., Highland Realty Co. v. Avondale Land Co., 174 Ala. 326, 56 So. 716 (1911) (holding that a developer's dedicating a plat map and selling a unit creates incorporeal hereditaments in the owners of the lots, consisting, e.g., of the right to use those areas designated on the map as public thoroughfares); and Kennedy Stave & Cooperage Co. v. Sloss-Sheffield Steel & Iron Co., 137 Ala. 401, 34 So. 372 (1903) (holding that a deed granting a right to use timber or minerals from property for specific purposes transferred an incorporeal hereditament). Accordingly, we hold that the trial court properly dismissed this claim.
The judgment of the trial court is due to be affirmed.
APPEAL DISMISSED IN PART; JUDGMENT AFFIRMED.
HOOPER, C.J., and HOUSTON, KENNEDY, COOK, and BROWN, JJ., concur.

On Application for Rehearing
MADDOX, Justice.
APPLICATION OVERRULED.
HOOPER, C.J., and HOUSTON and BROWN, JJ., concur.
COOK, J., dissents.
SEE and LYONS, JJ., recuse themselves.
COOK, Justice (dissenting from the denial of rehearing).
On original deliverance, I concurred in the decision to affirm the summary judgment for AmSouth Bank in all respects. On reconsideration, however, I would grant the application for rehearing to reexamine the equitable-estoppel issue addressed in the original opinion.
McCormack claims that AmSouth should be equitably estopped from asserting the statute of limitations as a defense to McCormack's claim that AmSouth breached its fiduciary duty to him. McCormack argues that AmSouth's representations that it was proceeding with litigation in a case this Court considered on appeal in Martin v. Drummond Co., 663 So.2d 937 (Ala.1995), lulled him into not filing a lawsuit. Representations by a lawyer hired by AmSouth and acting on behalf of AmSouth's trust clients in Martin and McCormack's inaction in reliance on those representations, *547 he says, are evidence indicating that AmSouth successfully induced him not to sue. AmSouth claims, however, that in order to be induced to refrain from doing something, McCormack must first have had the impulse to do it. On original deliverance, the Court accepted AmSouth's argument as the better one.
On reconsideration, however, I have concluded that AmSouth's position is flawed; it does not recognize that reliance on a representation can prevent the formation of a contrary impulse. That is the situation here. While I recognize that a person may have an impulse to do a particular act and may be persuaded not to do it, I also realize that a person may reasonably rely on a representation and forbear to do something, for example, not pursue a legal remedy.
This case is distinguishable from City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159 (Ala.1989), relied upon by the Court in its original opinion. In Cochrane Roofing, the City knew from the beginning the problems with the roof and for a period of over 5 years and 11 months, cooperated with Cochrane Roofing in attempting to fix the problems. The facts of this case are materially different. Here, McCormack met with the lawyer hired by Amsouth to represent its trust clients in the Martin case. McCormack received two letters from the lawyer's firm in 1993 informing him of the progress of the Martin litigationlitigation that did not terminate until this Court released its opinion on July 7, 1995. McCormack filed this action four days later.
It was not unreasonable for McCormack to withhold from filing his action until the Martin litigation was complete. Had AmSouth been successful in the Martin litigation, this lawsuit would not have been necessary. The alternative would have been to require McCormack to file an action against AmSouth during the pendency of the Martin litigation. I would hold, therefore, that AmSouth is equitably estopped from asserting the statute-of-limitations defense.
NOTES
[1] AmSouth's complaint in intervention in that case, made a part of the record here, reflects that in that case AmSouth represented dozens of trusts and acted as agent and custodian for numerous other parties. Among those entities that AmSouth represented was the McCormack Trust.