810 So.2d 645 (2001)
JIM WALTER HOMES, INC.
v.
Arthur KENDRICK.
1981938.
Supreme Court of Alabama.
July 13, 2001.
*647 Richard H. Gill, George W. Walker III, and J. David Martin of Copeland, Franco, Screws & Gill, P.A., Montgomery, for appellant.
Jere L. Beasley, Andy D. Birchfield, Jr., Karen L. Mastin, and P. Leigh O'Dell of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery; and Russell L. Irby, Eufaula, for appellee.

On Application for Rehearing
PER CURIAM.
The opinion of May 11, 2001, is withdrawn and the following is substituted therefor.
The defendant, Jim Walter Homes, Inc. ("JWH"), appeals from a judgment entered against it on a jury verdict for the plaintiff Arthur Kendrick.
JWH builds houses to an agreed-upon percentage of completion (up to 90%), and the buyer finishes the house. In 1992, Kendrick visited a JWH sales office in Phenix City, where he walked through several model homes built on the sales lot and obtained brochures containing descriptions and pictures of available JWH house styles. Kendrick testified that the JWH salesperson assured him that JWH "builds good quality homes" and that JWH used "good quality materials."
Kendrick signed a contract and related financing documents for the purchase of a *648 JWH house. The house was constructed on Kendrick's land in Bullock County, at a cost of $47,940. Kendrick took possession of the house in April 1992, after signing a JWH form to acknowledge substantial completion of the house. Kendrick and his wife moved into the house in May 1992.
As Kendrick noticed defects in the house, he notified JWH and JWH sent workers to repair the problems. Kendrick testified that he knew in 1992 that he did not have a "good quality" house, that in 1992 he was aware of most of the problems he later complained of, and that by the end of 1993 he knew about almost all of the problems with the house.
In 1995, Kendrick filed a Chapter 13 bankruptcy petition, listing JWH as one of his creditors; however, Kendrick did not list his possible claims against JWH as "potential assets."[1] In December 1997, Kendrick sued JWH, alleging breach of contract, fraud, fraudulent suppression, and breach of warranty.
The case was tried in May 1999. JWH moved for a judgment as a matter of law at the close of Kendrick's case. The trial court granted the motion as to the fraudulent-suppression claim, but denied the motion as to all remaining claims. At the close of the evidence, the trial court denied JWH's renewed motion for a judgment as a matter of law and submitted the case to the jury on Kendrick's claims of breach of contract, breach of warranty, and fraud.
The jury returned a general verdict for Kendrick, awarding him $40,000 in compensatory damages and $50,000 in punitive damages. The trial court entered a judgment on the verdict and later denied JWH's postjudgment motion for a judgment as a matter of law.

I.
JWH contends that because Kendrick's bankruptcy petition was pending in December 1997, when he sued, Kendrick's claims against JWH were part of his bankruptcy estate. JWH argues that, according to the decision in Cooks v. Jim Walter Homes, Inc., 695 So.2d 19 (Ala.Civ.App. 1997), Kendrick had no standing to bring this action. In Cooks, the plaintiffs sued JWH while their petition in bankruptcy was pending. The Court of Civil Appeals held that, pursuant to 11 U.S.C. § 1306(a)(1), the plaintiffs' claims against JWH became part of their bankruptcy estate and the bankruptcy trustee was the proper party to maintain the action against JWH.
This Court, in Ex parte Moore, 793 So.2d 762 (Ala.2000), overruled the holding in Cooks, stating:
"[I]n a recent opinion the United States Court of Appeals for the Second Circuit stated: `Although some courts of appeals have held that Chapter 7 debtors have no standing to pursue causes of [action] that belong to the estate, see, e.g., Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir.1988), we reach the contrary holding with respect to Chapter 13 debtors who pursue such causes of action.' Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 515-16 (2d Cir.1998). We find the Second Circuit's opinion to be well reasoned. In holding that Chapter 13 debtors have standing to pursue causes of action that belong to the bankruptcy estate, the Second Circuit looked at both the legislative history of 11 U.S.C. § 1306 and the purpose for denying standing to bankruptcy debtors.... The Second Circuit, in considering the differences between Chapter 7 and Chapter 13 bankruptcy proceedings, explained *649 that the purpose for denying standing to debtors in Chapter 7 proceedings is absent in Chapter 13 proceedings:
"`In Chapter 13 proceedings (unlike Chapter 7 proceedings) the creditors' recovery is drawn from the debtor's earnings, not from the assets of the bankruptcy estate.... Accordingly, the trustee's participation in such an action is generally not needed to protect the Chapter 13 creditors' rights.'

"Id. A Chapter 13 debtor does not lose standing to proceed on a cause of action after a proceeding in bankruptcy is instituted, as does a debtor under Chapter 7."
793 So.2d at 764.
Kendrick filed a Chapter 13 bankruptcy petition. Thus, he had standing to proceed in his action against JWH after his bankruptcy proceeding was instituted.

II.
JWH maintains that Kendrick was judicially estopped from bringing this action because Kendrick did not list his claims against JWH as assets of his bankruptcy estate.
"Courts in Alabama have repeatedly held that a plaintiff is judicially estopped from bringing a cause of action in state court that was not timely listed in his bankruptcy proceedings as at least a contingent asset." In re Tippins, 221 B.R. 11, 26 (Bankr.N.D.Ala.1998).
In Jinright v. Paulk, 758 So.2d 553 (Ala.2000), this Court observed that the purpose of the doctrine of judicial estoppel would not be accomplished, but would be frustrated, if a defendant was allowed to use the doctrine to the defendant's advantage and at the expense of plaintiffs who had claims against the defendant but had failed to include those claims as part of their bankruptcy estate. "[A] debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules ..., without more, are not sufficient to invoke the application of the doctrine of judicial estoppel." Jinright v. Paulk, 758 So.2d at 559 (citing In re Griner, 240 B.R. 432 (Bankr.S.D.Ala. 1999)).
Kendrick testified that he did not become aware of his claims against JWH until after the bankruptcy proceeding had begun. Kendrick's testimony is supported by the fact that at the time he filed his Chapter 13 bankruptcy petition, JWH was attempting to repair Kendrick's house. Nothing in the record indicates that Kendrick deliberately manipulated the courts when he did not amend his bankruptcy schedule after he filed his complaint. The doctrine of judicial estoppel did not prevent Kendrick's asserting his claims against JWH.

III.
JWH contends that the trial court erred in denying its motion for a judgment as a matter of law with regard to the claim of fraud.
"An appellate court, when reviewing a ruling on a motion for a judgment as a matter of law, uses the same standard the trial court used initially in granting or denying the motion. Regarding questions of fact, the ultimate question is whether the nonmovant presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution.... [T]he nonmovant must present `substantial evidence' in order to withstand a motion for a judgment as a matter of law. A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by *650 the jury. In reviewing a ruling on a motion for a judgment as a matter of law, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling."
Bell v. T.R. Miller Mill Co., 768 So.2d 953, 956 (Ala.2000) (citations omitted).
"[W]here several claims are submitted to the jury, over [motions for judgment as a matter of law made] by the defendant, and the jury renders a general verdict as to those claims, on appeal this Court must determine whether the plaintiff presented substantial evidence in support of each of the claims."
Ex parte Grand Manor, Inc., 778 So.2d 173, 177 (Ala.2000). (Emphasis added.) "If the trial court should have directed a verdict as to one or more of [Kendrick's] claims, then we cannot assume that the jury's general verdict ... was returned on a `good' claim or on good claims and the judgment based on the jury's verdict must be reversed." Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala.1998). "However, where the defendant does not challenge the `bad counts' (i.e., those not supported by substantial evidence) with specificity in his motions for [a judgment as a matter of law], this Court will presume that the verdict was returned on the `good count.'" Ex parte Grand Manor, Inc., 778 So.2d at 177. Finally, "`[a motion for a judgment as a matter of law] "is properly denied where there exists any conflict in the evidence for consideration by the jury." Cloverleaf Plaza, Inc. v. Cooper & Co., 565 So.2d 1147, 1149 (Ala. 1990).'" Hutchins v. DCH Reg'l Med. Ctr., 770 So.2d 49, 52 (Ala.2000).
JWH contends that Kendrick's fraud claim is barred by the two-year statute of limitations set out in § 6-2-38(l), Ala.Code 1975.
"When a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion. However, when a disputed issue of fact is raised, the determination of the date of accrual of a cause of action for statute-of-limitations purposes is a question of fact to be submitted to and decided by a jury."
Kindred v. Burlington Northern R.R., 742 So.2d 155, 157 (Ala.1999) (citations omitted.)
"A fraud action is subject to a two-year statute of limitations. Ala.Code 1975, § 6-2-38. However, the fraud claim accrues only when the plaintiff discovers the fraud or when the plaintiff, acting as a reasonable person, should have discovered the fraud. Ala.Code 1975, § 6-2-3.... `The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.' Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458, 463 (Ala.1991)(emphasis in original)."
Liberty Nat'l Life Ins. Co. v. McAllister, 675 So.2d 1292, 1297 (Ala.1995)(some citations omitted).
Kendrick testified that he knew in 1992 that he did not have a "quality home"the kind of house he says JWH fraudulently promised would be his if he purchased a JWH house. However, as JWH points out, Kendrick waited five years to bring this action against JWH. We note, too, that Kendrick testified that he stopped making his mortgage payments *651 in March 1995at least 32 months before filing this lawsuitbecause, he said, he "knew" JWH was not going to fix the problems with his house. Kendrick's testimony clearly indicates that he "actually knew" in March 1995, if not before, of facts that would have put a reasonable person on notice of fraud and, yet, he did not sue for at least 32 months. Consequently, Kendrick's claim of fraud is barred, as a matter of law, by the statute of limitations.

IV.
Kendrick argues that JWH is equitably estopped from asserting the statute-of-limitations defense. This argument is not supported by the evidence. Evidence indicated that since 1992 JWH had been making repairs as Kendrick reported problems. However, no evidence indicated that JWH promised to repair the defects in Kendrick's house in order to induce Kendrick not to sue JWH. The record shows that Kendrick did not threaten to sue JWH until October 1996. Kendrick testified that each time he reported a problem he relied on JWH's stating to him that the problem would be fixed; however, the record contains no evidence indicating that JWH made, or that Kendrick relied upon, a promise to repair in return for a promise not to sue.
"[A]pplication of the doctrine of equitable estoppel must be tempered by applying `a standard of reasonable reliance.'" McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 543 (Ala.1999), quoting City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159, 1167 (Ala.1989). A delay of five years in suing is not reasonable under the circumstances of this case, especially given that the record contains no evidence indicating that JWH made promises to Kendrick on the condition that Kendrick not sue JWH. Thus, the doctrine of equitable estoppel does not prevent JWH from asserting a statute-of-limitations defense.
Moreover, under the facts of this case, to hold that JWH's making repairs to Kendrick's house tolled the running of the statutory limitations period would violate public policy:
"If helping extends liability, then the businessperson is left to struggle between attempting to maintain a good business relationship with the client and protecting his or her business interests by not, in effect, extending the statute of limitations."
City of Birmingham v. Cochrane Roofing & Metal Co., supra, 547 So.2d at 1168. See also, Clark v. Jim Walter Homes, Inc., 719 F.Supp. 1037 (M.D.Ala.1989).
Because JWH specifically pleaded the statute-of-limitations defense in its motions for a judgment as a matter of law, and because we have concluded that Kendrick's claim is barred as a matter of law, the judgment must be reversed. Glenlakes Realty Co. v. Norwood, supra. Our conclusion that the statute of limitations bars Kendrick's claim of fraud requires a reversal; therefore, we do not address JWH's other contentions.

Conclusion
Because the jury returned a general verdict, the judgment based on that verdict must be reversed. The general verdict, however, encompasses claims of breach of contract and breach of warranty. JWH has presented no argument with regard to these two claims; therefore, we cannot determine that JWH was entitled to a judgment on those claims, and, thus, we cannot render a judgment for JWH, as JWH has asked us to do. The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
OPINION OF MAY 11, 2001, WITHDRAWN; OPINION SUBSTITUTED; *652 APPLICATION FOR REHEARING DENIED; REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, WOODALL, and STUART, JJ., concur.
HARWOOD, J., concurs in the result.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the order overruling the application for rehearing. New material inserted in the new substitute opinion in this case reveals that the decision to reverse the trial court on the ground of the statute of limitations is wrong.
The critical part of the rationale of the main opinion appears at 810 So.2d 650-51:
"We note, too, that Kendrick testified that he stopped making his mortgage payments in March 1995at least 32 months before filing this lawsuitbecause, he said, he `knew' JWH was not going to fix the problems with his house. Kendrick's testimony clearly indicates that he `actually knew' in March 1995, if not before, of facts that would have put a reasonable person on notice of fraud and, yet, he did not sue for at least 32 months. Consequently, Kendrick's claim of fraud is barred, as a matter of law, by the statute of limitations."
However, the main opinion, including some new material, states at 810 So.2d 649:
"Kendrick testified that he did not become aware of his claims against JWH until after the bankruptcy proceeding had begun [in June 1995]. Kendrick's testimony is supported by the fact that at the time he filed his Chapter 13 bankruptcy petition [in June 1995], JWH was attempting to repair Kendrick's house. Nothing in the record indicates that Kendrick deliberately manipulated the courts when he did not amend his bankruptcy schedule after he filed his complaint. The doctrine of judicial estoppel did not prevent Kendrick's asserting his claims against JWH."
If the repairs kept him unaware of his claims as of the time he filed for bankruptcy in June 1995, he could hardly have been aware of his claims during the preceding March as the main opinion asserts. Kendrick's unawareness "of his claims against JWH until after the bankruptcy proceeding had begun" in June 1995 creates a fact issue of "when the plaintiff, acting as a reasonable person, should have discovered the fraud." Liberty Nat'l Life Ins. Co. v. McAllister, 675 So.2d 1292, 1297 (Ala.1995) (as quoted in the main opinion, 810 So.2d at 650). That is, Kendrick's testimony of his unawareness of his claims when he filed his bankruptcy petition in June 1995 and thereafter, as supported by proof of the efforts of JWH to repair Kendrick's house then and thereafter, supports the implicit conclusion of the jury that the plaintiff had not discovered the fraud and, acting as a reasonable person, should not necessarily have discovered the fraud more than two years before Kendrick filed this suit. Accordingly, the jury verdict, and the judgment entered on it, were valid. We should affirm.
NOTES
[1] Kendrick was discharged in bankruptcy in June 1998.