PITTMAN, Judge.
Angela D. Franklin and Charles L. Franklin appeal from a summary judgment in favor of Walter Mitchell, a sole proprietor doing business as Southern Classic Construction. We affirm.
In June 2001, Mitchell agreed to build a new house for the Franklins for $143,500, according to plans and specifications supplied by the Franklins. Construction was complete, and the Franklins moved into the residence, in October 2001.
In April 2006, the Franklins noticed that the bathroom and kitchen floors in the house were soft and “sagging.” Charles Franklin entered the crawl space under the house to investigate, but he saw no damaged wood and no indication of what was causing the floors to sag. Franklin contacted Mitchell and inquired whether the flooring material could be defective. Mitchell acknowledged that, on an earlier occasion, he had received defective flooring material from the same manufacturer, and he gave Franklin the contact information for the flooring supplier. For the next eight months, Franklin attempted without success to deal with the flooring manufacturer’s representative.
In March 2007, the Franklins engaged a civil engineer and licensed home inspector, Dr. William Payne, to perform an inspection of the house. According to Payne’s March 7, 2007, home-inspection report, the sagging or softening of the subfloor was not a result of defective wood. Instead, the depressions in the subfloor were caused by a loss of strength in the decking because of the absorption of moisture from condensation on the air-conditioning boots[1] and the floor decking. An air return located within 18 inches of the bathroom depression area was not properly sealed and was drawing moisture into the area. The depression in the kitchen floor was also the result of the decking’s having absorbed moisture. It appeared that air was leaking from the floor vents and the air return, and those leaks provided a constant source of moisture in the crawl space. Mold and mildew were visible on the decking and floor joists.
The Franklins immediately contacted Mitchell about the items enumerated on *576 the home-inspection report. Mitchell told the Franklins that the one-year warranty on his work had expired, but he offered to have Southern Mechanical Heating & Air, Inc. (“SMHA”), the subcontractor that had installed the Franklin’s heating, ventilating, and air-conditioning (“HVAC”) system (and whose principal, Jim Mitchell, is his father) look at the Franklins’ HVAC system. Walter Mitchell admitted that he later told his father, Jim Mitchell, that “Charles [Franklin] is a good guy; I’ve known him; let’s fix it.”
In late March or early April 2007, Jim Mitchell and Robert Dempsey, an SMHA subcontractor, replaced the subfloor near the Franklins’ bathroom and braced the subfloor in front of the refrigerator. SMHA later undertook further repairs when an SMHA crew went into the Franklins’ crawl space to tape all the ducts, seal the air return, and insulate the boots. After they left, Charles Franklin inspected the crawl space to determine what repairs had been made. He was dissatisfied with the work that had been done. Specifically, he saw that not all the ducts had been taped and that there was no insulation on the boots. He also saw tape over mold and mildew. Franklin contacted Walter Mitchell and asked him to look at what he considered was faulty work that needed to be fixed. Walter Mitchell came to the premises, inspected the work that had been done under the Franklins’ house, and told Franklin that he was not obligated to do anything because the one-year warranty on his work had expired. He also stated that any repairs that had been attempted were gratuitous and had been undertaken only because he and Franklin were friends. Franklin later asked Jim Mitchell whether SMHA would be willing to turn the Franklins’ complaints over to its insurance company; Jim Mitchell indicated that SMHA would not report the complaints to its insurer. He also informed Franklin that the repairs were unnecessary, that the HVAC work was initially done correctly, and that he had undertaken the repairs only because his son Walter had asked him to do so.
Charles Franklin subsequently contacted an attorney to discuss filing a claim against Jim Mitchell and SMHA based on the alleged faulty repair work. According to Franklin, the attorney told him it would be necessary to get an expert opinion on the repair work and to pay the attorney a $5,000 retainer. Franklin stated that he could not afford to pay the attorney; instead, he began saving his money to get another home inspection by Payne.
On March 18, 2008, Payne submitted a second home-inspection report. The report concluded that the attempted repairs had not remedied the moisture problem. In addition, Payne found two additional construction defects: the brick veneer on the house had been improperly installed without flashing between the sheathing and the weep holes, and the piers under the brick hearth had been improperly constructed and installed. On April 21, 2008, Mid-South Testing and Engineering Company conducted an indoor air-quality assessment at the Franklins’ request. The assessment confirmed the presence of mold and mildew in the dwelling. The report noted that unless proper repairs were made to the HVAC ductwork in the crawl space, the interior of the house would be heavily affected by mold.
On February 11, 2009, the Franklins sued Walter Mitchell d/b/a Southern Classic Construction, asserting claims of negligent construction, subsequent negligent repairs, and breach of contract. Mitchell denied the allegations of the complaint and asserted several affirmative defenses, including the statute of limitations. Mitchell *577 also filed a third-party complaint against three of the subcontractors on the Franklin construction project — SMHA, DH Masonry, and Frakes Insulation — asserting that if he was liable to the Franklins, then those subcontractors were liable to him.
Walter Mitchell moved for a summary judgment on the Franklins’ claims, contending that the Franklins’ negligence claim accrued, and the two-year statutory limitations period set out in § 6-2-38(l), Ala.Code 1975, began to run, in April 2006, when the Franklins first became aware of sagging floors in their bathroom and kitchen. Mitchell maintained that the Frank-lins’ negligence claim was, therefore, barred by the time the Franklins filed suit on February 11, 2009. On the claim of subsequent negligent repairs, Mitchell denied that he had performed, supervised, paid for, or provided any materials for the repairs that had been made on the Frank-lins’ property. Mitchell stated that he had not been present when the repairs were made. Mitchell asserted that SMHA and Dempsey were independent contractors over whom he had exercised no control or supervision. On the breach-of-contract claim, Mitchell argued that the Franklins’ claim had accrued in October 2001, when he completed his performance under the contract to build the Franklins’ house, and, thus, that the claim was barred by the six-year statute of limitations set out in Ala. Code 1975, § 6-2-34(9), when the Frank-lins filed suit on February 11, 2009.
The Franklins amended their complaint to add a claim of fraudulent concealment, asserting that, as a consequence of Walter Mitchell’s allegedly misleading statements that his warranty had expired, that he was not obligated to perform any repairs, and that the repairs that had been performed were gratuitous, the Franklins were under the false impression that they did not have a legal claim against Mitchell. The Frank-lins asserted that they thought their only recourse was to rely upon repairs that had been made by SMHA because they could not legally force Mitchell to remedy any construction defects. Accordingly, the Franklins alleged, they delayed legal action against Mitchell while they determined whether the repairs would cure the moisture problems in the crawl space.
The Franklins opposed Mitchell’s summary-judgment motion and filed their own motion for a summary judgment. Following a hearing on the motions, the trial court entered a summary judgment in favor of Walter Mitchell d/b/a/ Southern Classic Construction. The Franklins timely appealed to the Supreme Court of Alabama, which transferred the appeal to this court pursuant to § 12 — 2—7(6).[2]

Standard of Review

Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote *578 omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see § 12 — 21—12(d), Ala.Code 1975.

Discussion

The Franklins raise three issues on appeal. First, they argue that their negligence claim was not barred by the statute of limitations because, they say, the claim did not accrue, and the statute did not begin to run, until they received the home-inspection report in March 2007 and were made aware of what had caused their floors to sag. Accordingly, they insist that their February 11, 2009, complaint was timely filed. Second, they argue that Walter Mitchell was estopped from relying on a statute-of-limitations defense because, they say, by asserting that the one-year warranty on his work had expired, Mitchell fraudulently induced them to believe that the statute of limitations had already expired on any negligence claim they might have had against him. Third, they contend that the summary judgment on the subsequent-negligent-repairs claim was erroneous because, they contend, there were genuine issues of material fact regarding whether SMHA was Walter Mitchell’s apparent agent or agent by es-toppel, whether Mitchell had a nondelega-ble duty to repair, and whether Mitchell voluntarily undertook a duty to repair. The Franklins make no argument regarding the summary judgment on their breach-of-contract claim, having conceded in the trial court that the claim was barred by the six-year statute of limitations set out in Ala.Code 1975, § 6-2-34(9).

I. Accrual of the Negligence Claim

Section 6 — 2—38(¿) provides that
“[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.”
A negligence action accrues “as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of damages is apparent at the time of the first legal injury.” Koch v. State Farm Fire & Cas. Co., 565 So.2d 226, 231 (Ala.1990).
The Franklins contend that their negligence claim did not accrue in April 2006, when they first noticed the sagging floors in their house, because, they say, the sagging floors constituted a latent defect for which the cause was then unknown. The Franklins maintain that, without knowing the cause of the damage to their floors, they could not have known that they had an actionable injury. This court addressed, and rejected, essentially the same argument in CertainTeed Corp. v. Russell, 883 So.2d 1266 (Ala.Civ.App.2003). In that case, Carolyn Russell, an owner of a newly constructed house, noticed a black sooty residue that had begun to accumulate inside the house in January 1996. More than two years later, in September 1998, Russell sued CertainTeed Corporation, the manufacturer of ductwork insulation that, according to Russell’s complaint, had decomposed and had been dispersed throughout the house by the HVAC system. CertainTeed moved for a judgment as a matter of law (“JML”) on Russell’s claim under the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”), arguing that the claim was barred by the statute of limitations. The trial court denied the motion and subsequently entered a judgment on the jury’s verdict in favor of Russell on, among other claims, her AEMLD claim, but this court reversed that portion of the trial court’s judgment, *579 repeating the following well established legal principles:
“Under Alabama law, a noncontract cause of action arises when the first indication of damage becomes apparent to the claimant. Our Supreme Court has stated the rule as follows:
“ ““ “If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrued and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiffs ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.” ’ ” ’
“McWilliams v. Union Pac. Res. Co., 569 So.2d 702, 703-04 (Ala.1990) (quoting Garrett v. Raytheon Co., 368 So.2d 516, 519 (Ala.1979), quoting in turn Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 608, 285 So.2d 468, 473 (1973), quoting in turn, Kelley v. Shropshire, 199 Ala. 602, 75 So. 291, 292 (1917)).”
CertainTeed Corp. v. Russell, 883 So.2d at 1269-70 (emphasis added). This court concluded that “Russell’s AEMLD cause of action accrued when she observed the damage to her new house, even though she did not know ivhat had caused the damage.” 883 So.2d at 1270 (emphasis added).
In their appellate brief, the Franklins suggest that, “[t]o the extent that Certain-Teed held that a personal injury action acerue[s] when a claimant observe[s] damage to her new home, even though the claimant d[oes] not know what caused the damage,” CertainTeed is flawed, unsupported by authority, and should be overruled. Because CertainTeed applies well established Alabama law, and is supported by venerable authority dating back to 1917, we decline the Franklins’ invitation to overrule it.
The Franklins’ argument — that, without knowing the cause of their sagging floors (which they characterize as a latent injury), they could not have known that they had an injury that was actionable— appears to be based upon Ala.Code 1975, § 6-5-220(e), which outlines when a cause of action against architects, engineers, and builders accrues. The statutory scheme of which § 6-5-220 is a part has no application here because Walter Mitchell d/b/a Southern Classic was not a “builder” within the meaning of § 6-5-220(a). That section specifies that a builder is
“[a]ny individual, partnership, firm, or corporation that constructed, or performed or managed the construction of, an improvement, or any portion thereof, on or to real estate, and at the time of the construction was licensed as a general contractor in the State of Alabama.”
(Emphasis added.) Walter Mitchell testified that he was licensed as a “residential home builder,” see Ala.Code 1975, § 34-14A-2(10), by the Home Builders Licen-sure Board, see Ala.Code 1975, § 34-14A-3, but that he did not have a general contractor’s license.
II. Estoppel to Plead the Statute-of-Limitations Defense
The Franklins insist that Walter Mitchell was estopped from relying on a statute-of-limitations defense because, they say, by asserting that the one-year war *580 ranty on his work had expired, Mitchell fraudulently induced them induced them to believe that the statute of limitations had already expired on any negligence claim they might have had against him.
“When the plaintiff alleges the defendant should be estopped from raising the defense of the statute of limitations, as the plaintiffs do in this case, then the actions of the defendant come into question. In general, conduct which is sufficient to give rise to an estoppel against the pleading of the statute of limitations must amount to an affirmative inducement to the plaintiff to delay bringing the action.”
Moore v. National Sec. Ins. Co., 477 So.2d 346, 348 (Ala.1985); see also Seybold v. Magnolia Land Co., 376 So.2d 1083, 1085 (Ala.1979). “Vague assurances” do not amount to an affirmative inducement to delay filing suit. Moore, 477 So.2d at 348.
In Jim Walter Homes, Inc. v. Kendrick, 810 So.2d 645 (Ala.2001), Arthur Kendrick bought a house from Jim Walter Homes, Inc. (“JWH”), in 1992. Kendrick acknowledged that he knew in 1992 that the house had problems and was not of “good quality” as JWH had warranted it to be. 810 So.2d at 648. When Kendrick noticed defects in the house, he reported the defects to JWH and JWH undertook to repair the defects. Kendrick sued JWH in 1997, and JWH asserted a statute-of-limitations defense, arguing that Kendrick had been aware of problems with the house but had waited five years to file his complaint. Kendrick argued that JWH was estopped to assert the statute-of-limitations defense because it had been making repairs as he reported defects in the house. The supreme court rejected that argument, concluding that it was not supported by the evidence. The court stated:
“Evidence indicated that since 1992 JWH had been making repairs as Kendrick reported problems. However, no evidence indicated that JWH promised to repair the defects in Kendrick’s house in order to induce Kendrick not to sue JWH. The record shows that Kendrick did not threaten to sue JWH until October 1996. Kendrick testified that each time he reported a problem he relied on JWH’s stating to him that the problem would be fixed; however, the record contains no evidence indicating that JWH made, or that Kendrick relied upon, a promise to repair in return for a promise not to sue.”
810 So.2d at 651 (emphasis added). The same is true in the present case. The Franklins presented no evidence of an affirmative inducement — that is, that Walter Mitchell Classic promised to make repairs on the Franklins’ premises in return for the Franklins’ promise not to sue.
III. The Subsequent-Negligentr-Repairs Claim
The Franklins argue that the summary judgment on the subsequent-negligent-repairs claim was erroneous because, they say, there were genuine issues of material fact regarding whether SMHA was Walter Mitchell’s apparent agent or agent by estoppel, whether Mitchell had a nondelegable duty to repair, and whether Mitchell voluntarily undertook a duty to repair. Their argument is premised on the following undisputed facts: that Walter Mitchell informed the Franklins that he was not HVAC certified and that he was not trained in mold and mildew recognition and removal, that Mitchell performed no repairs, and that SMHA made repairs to the Franklins’ HVAC system at the request of Mitchell and for the benefit of Mitchell.
“Under Alabama law, the test of agency is the right of control, whether exercised or not. Brown v. Commercial Dispatch Publishing Co., 504 So.2d 245 *581 (Ala.1987). For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Id. at 246. ‘Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract.’ Malmberg v. American Honda Motor Company, Inc., 644 So.2d 888 (Ala.1994).”
Glass v. Southern Wrecker Sales, 990 F.Supp. 1344, 1352 (M.D.Ala.1998). Although the record demonstrates that Walter Mitchell directed SMHA to “fix” the Franklins’ HVAC system, the Franklins presented no evidence, much less substantial evidence, indicating that Mitchell directed the manner in which SMHA should accomplish the repairs. Furthermore, the Franklins presented no evidence to contradict Mitchell’s assertions that he had not supervised, paid for, or provided any materials for the repairs and that he had not been present when the repairs were made. Therefore, the Franklins failed to establish that, when SMHA performed repairs on the Franklins’ premises, it was acting as Mitchell’s agent.
Moreover, no matter by whose agency, pursuant to what duty, or under what compulsion the repairs were performed, it is undisputed that the Franklins suffered no damages as a consequence of the allegedly negligent repairs. In deposition testimony, Charles Franklin stated unequivocally that, although the repairs did not solve the moisture problem, they did not make the problem worse. Because “[d]amages are an essential element of the tort of negligence,” Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330, 335 (Ala. 2006), the trial court did not err in entering a summary judgment in favor of Walter Mitchell on the subsequent-negligent-repairs claim.

Conclusion

The Franklins did not file their complaint within two years of the accrual of their. negligent-construction claim. They failed to present substantial evidence demonstrating either that the delay in filing the complaint was attributable to a fraudulent concealment of their cause of action by Walter Mitchell, or that they suffered any damages as a result of allegedly negligent repairs to their HVAC system. Accordingly, we affirm the trial court’s judgment in all respects.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. Apparently, a boot is the housing for an air vent.

. Notwithstanding the fact that the trial court did not expressly rule on Walter Mitchell’s third-party claims, the judgment appealed from is final. The third-party claims, being dependent upon the liability of Mitchell to the Franklins, were necessarily denied when the trial court entered a judgment in favor of Mitchell and against the Franklins.